**A & A CONCRETE, INC., et al.,
Plaintiffs-Appellants,**

v.

**The WHITE MOUNTAIN APACHE
TRIBE, et al.,
Defendants-Appellees.**

No. 80–5272.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1981.

Decided May 13, 1982.

John P. Otto, Phoenix, Ariz., argued, for plaintiffs-appellants; Philip C. Gerard,

Johnson & Gerard, P. C., Phoenix, Ariz., on brief.

Stefani Gabroy, Tucson, Ariz., argued, for defendants-appellees; Michael J. Brown, Tucson, Ariz., on brief.

Before DUNIWAY and FERGUSON, Circuit Judges, and KELLAM,* District Judge.

DUNIWAY, Circuit Judge:

Appeal from a judgment dismissing the amended complaint and the action under Rule 12(b) F.R.Civ.P. for "want of jurisdiction." The first two counts of the complaint, which is in five counts, attempt to state claims under 42 U.S.C. § 1983 (Count I) and § 1985(2) and (3) (Count II). The other three counts attempt to state pendent claims under state law. We reverse as to Count I and affirm as to Count II. We express no opinion about the three pendent claims, leaving it to the district court to decide whether to reinstate any of them.

### I. *Facts.*

The amended complaint, in Count III, states that the plaintiffs Kayle and Sandy Adams, husband and wife, and their corporation A & A Concrete, Inc., are engaged in the manufacture and selling of concrete and cement. They obtain their cement from Phoenix Cement Company which is the only supplier in the state of Arizona large enough to supply their needs. The defendant Charles Patterson is a competitor of the plaintiffs.

Certain defendants, whom we call, collectively, the Apache defendants, are identified in the caption of the amended complaint. These are The White Mountain Apache Tribe, doing business as White Mountain Apache Development Enterprises, Neil Hall and his wife, Ronnie Lupe and his wife, Ramus Albert and Harley Janway, board members of the Enterprises, White Mountain Apache Housing Authority, a corporation, Lela MacCose, Chairperson of the

Authority, and her husband, Berlinda Bones, Executive Director of the Authority, and her husband, Leander Massey, Contracting Officer of the Authority, and his wife, Anna L. Goseyun, Tribal Court Judge, and Becky Ethebah, Clerk of the Tribal Court.

With the foregoing information in hand, we summarize the allegations of Count I. Defendant Marlin Gillespie was acting in his capacity as sheriff of Navajo County, Arizona, and defendants Gene Russell, Russell Lupe, and Charles Lane were acting in their capacities as deputy sheriffs of the county. The deputies "acted pursuant to an agreement and an arrangement with Tribal officials and officers and the defendant Patterson whereby off-reservation invalid service of tribal court process and writs of garnishment are served jointly and in concert by tribal officers and members of the Navajo sheriff's office, on non-Indian, off-reservation parties to purported actions in the tribal court."

The gist of Count I is that beginning on February 28, 1979, and continuing to the time when the complaint was filed, all of the defendants except the Tribe entered into a conspiracy with the defendants Patterson to injure the plaintiffs in their business activities and drive them out of business and to deprive the plaintiffs of their right to due process of law and to the equal protection of the law and their privileges and immunities as citizens of the United States. Pursuant to the conspiracy, the defendants caused a complaint to be filed in the tribal court, alleging that the plaintiffs were indebted to the White Mountain Apache Development Enterprise in the sum of $250,000. The allegations of this complaint were false and malicious.

In filing the complaint in the tribal court the defendants knew that that court did not have jurisdiction over the plaintiffs in this action or subject matter jurisdiction under the claim stated in the tribal court complaint. The defendants, the sheriff and his

---

* The Honorable Richard B. Kellam, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

deputies, served or caused to be served the summons and complaint in the tribal action on the plaintiffs in this action and also served a writ of garnishment in the tribal court action on the Oakland Construction Company, which had a contract with the plaintiffs. As a result, that company has refused to pay the plaintiffs $17,270 that it owes them and has terminated its contract with them to their damage in the sum of $337,500. The defendants have caused judgment in the tribal court action to be entered against the plaintiffs in this case in the sum of $250,000.

Count II of the complaint repeats the allegations of Count I and then alleges that what was done was pursuant to a conspiracy by the defendants, including the defendants Patterson, the purpose of which was hindering, obstructing, and defeating the due course of justice in the state of Arizona and to deprive the plaintiffs of due process and the equal protection of the law in violation of 42 U.S.C. § 1985(2) and (3). The plaintiffs allege that they are members of a class "against which the animus of the conspiracy is directed, to wit: non-Indian Defendants sued in the tribal court all of whom are being denied due process of law and the equal protection of the laws" by virtue of "both racial and class-based invidious discrimination against all non-Indian Defendants who are sought to be proceeded against in the White Mountain Apache Tribal Court."

## II. *Sufficiency of Count I.*

Section 1983 of 42 U.S.Code is applicable only where the person sued acts "under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia." The White Mountain Apache Tribe is certainly not a state or territory or the District of Columbia! The claim, however, is that the sheriff's deputies who joined the alleged conspiracy and served the papers complained of were acting under color of Arizona law.

If all that was involved were an understanding between the sheriff and his deputies on the one hand and the officials of the Indian tribal court on the other hand that they would render each other mutual assistance in serving court papers, the sheriff agreeing to serve or assist in serving Indian process outside the reservation and the Indians agreeing to serve or assist in serving Arizona process inside the reservation, we would doubt that the requisite action under color of state law would be present. *See Torres v. First State Bank of Sierra County,* 10 Cir., 1978, 588 F.2d 1322, 1327. *Cf. Polk County v. Dodson,* 1981, —— U.S. ——, 102 S.Ct. 445, 70 L.Ed.2d 509, which holds that a deputy public defender, although employed and paid by the County, is not acting under color of state law when performing the traditional functions of a lawyer as counsel to an indigent defendant in a state criminal proceeding. The Court pointed out that except for the source of his salary, the public defender performs the same functions as a private attorney retained by the defendant. *See also Franklin v. State of Oregon, et al.,* 9 Cir., 1981, 662 F.2d 1337, 1345, holding that appointed counsel does not act under color of state law. We need not decide this question, however, because the complaint alleges more than carrying out such an agreement for mutual assistance in serving court papers. We suspect that the plaintiffs will not be able to prove anything more than such an agreement, but we are not here dealing with proof.

Here we deal with the allegations of a complaint, which must be taken as true. They also must be construed in a light favorable to the pleader and a judgment of dismissal can be sustained only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Scheuer v. Rhodes,* 1974, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90. Here it is alleged that the sheriff and his deputies conspired with the Pattersons and the Apache defendants in a scheme to put the plaintiffs out of business, their part of the scheme being to serve a summons and complaint and garnishment issued out of the tribal court and known by them to be invalid. We think that if the plaintiffs can prove these allegations they will bring themselves within § 1983, because the sheriff and his deputies

were purporting to act in their official capacities. *See Hoffman v. Halden*, 9 Cir., 1959, 268 F.2d 280, 292–298; *Adickes v. S. H. Kress & Co.*, 1970, 398 U.S. 144, 150–152, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142.

■ In support of their motion to dismiss the complaint, the defendants listed many grounds including tribal immunity, judicial and quasi-judicial immunity, failure to exhaust remedies in the tribal court, and the need for abstention by the federal court. The district court did not rule on these issues, and they were not briefed to this court. Under the circumstances, we do not consider them.

### III. *Sufficiency of Count II.*

■ In order to make a good claim under 42 U.S.C. § 1985(2) and (3), a complaint must allege invidiously discriminatory class-based animus. *Life Insurance Co. of North America v. Reichardt*, 9 Cir., 1979, 591 F.2d 499, 502–505. It must allege facts showing this invidiousness. *Aldabe v. Aldabe*, 9 Cir., 1980, 616 F.2d 1089, 1092. In the present case the complaint contains a bare conclusory allegation of animus directed toward the class of "non-Indian Defendants sued in the tribal court." In essence, the complaint challenges the attempt of the tribal court to treat non-Indian defendants in the same way as it treats Indian defendants. That is not class-based animus. The district court was right to dismiss Count II.

### IV. *Conclusion.*

The dismissal of Count II is affirmed. In all other respects, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.