**Amy NEUSTEIN, Plaintiff,**

v.

**Ozzie ORBACH, Brooklyn Society For the Prevention of Cruelty To Children, Ohel Foster Care Agency, the Legal Aid Society and the City of New York, Defendants.**

**No. 89–CV–3491.**

United States District Court,
E.D. New York.

March 5, 1990.

334

Kanon, Mandel & Braff, Brooklyn, N.Y. (Steven Mandel, of counsel), for plaintiff.

Dr. Ozzie Orbach, Brooklyn, N.Y., pro se.

Thurm & Heller, New York City (Milton Thurm, of counsel), for defendant Brooklyn Soc. for the Prevention of Cruelty to Children.

Ohrenstein & Brown, New York City (Mark J. Bunin, of counsel), for defendant Ohel Foster Care Agency.

Ross & Hardies, New York City (Peter I. Livingston, Todd Silverblatt and Michelle J. d'Arcambal, of counsel), for defendant Legal Aid Soc.

Peter L. Zimroth, Corp. Counsel, Law Dept., New York City (Paul Marks, Susan Fuller and Chlarens Orsland, Asst. Corp. Counsel, of counsel), for defendant City of New York.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

In this domestic relations suit disguised as a federal civil rights action, Defendants Ozzie Orbach ("Orbach"), Legal Aid Society ("LAS"), Brooklyn Society for the Prevention of Cruelty to Children ("BSPCC"), Ohel Foster Care Agency ("Ohel"), and the City of New York (the "City") (collectively, the "Defendants"), move pursuant to Fed. R.Civ.P. 12(b)(1) and (6) to dismiss the amended complaint.

This action was commenced on October 19, 1989, with the filing of a complaint by the plaintiff, Amy Neustein ("Plaintiff"). On November 9, 1989, Plaintiff filed an amended complaint[1] in which subject matter jurisdiction is premised on 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. § 1983, 28 U.S.C. § 2254 and 42 U.S.C. § 1985(2). Plaintiff alleges, among other things, a violation of her Sixth Amendment right to confront witnesses against her, a violation of her due process and equal protection rights under the Fifth and Fourteenth Amendments to the Constitution and a violation of her constitutional right to custody of her daughter (collectively, her "Constitutional Rights"). She seeks (a) sole custody of an infant child ("Sherry"), (b) denial of visitation privileges to the present legal custodian, Orbach, and (c) damages to compensate her for legal fees, acute mental anguish and suffering engendered by the loss of Sherry's companionship, love and affection, and her inability to pursue her career and studies.

1. Plaintiff filed her amended complaint approximately six hours after Orbach filed his Answer. A party may amend their pleading as a matter of course anytime before a responsive pleading is served. Otherwise a party must request the Court's permission or obtain written consent of the adverse parties. Fed.R.Civ.P. 15(a). Plaintiff failed to do either. In her complaint Plaintiff alleged jurisdiction under 28 U.S.C. § 2254 and 42 U.S.C. § 1983 and sought a writ of *habeas corpus* releasing Sherry from Orbach's custody, sole custody of Sherry and denial of visitation privileges to Orbach. For reasons discussed, *infra,* the Court clearly lacked jurisdiction and a motion to dismiss based on the complaint would have been granted. However, in light of the longstanding practice of permitting amendments when justice requires, *Id.; See generally* 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1471 (1990), the Court's decision is based upon the amended complaint.

## FACTS

The case involves a long and tortured history of proceedings, extending over several years, in the Family Court, the Appellate Division and the Court of Appeals of New York State.

Plaintiff and Orbach were married in 1979 and Sherry was born on September 2, 1980. Plaintiff and Orbach separated in 1982 and they were divorced in 1983 pursuant to an uncontested judgment issued by the Supreme Court of the State of New York, County of Kings. Although Sherry lived with Plaintiff, at Plaintiff's parents' home, Orbach continued to visit his daughter on a weekly basis. Plaintiff alleges that in May of 1986 her mother, Shirley Neustein (the "Grandmother"), witnessed Orbach sexually abusing Sherry. Although Plaintiff did not report these alleged acts to the authorities she limited Orbach's visits with Sherry.

### Chronology of Events

On August 5, 1986, Orbach instituted divorce proceedings in which he requested custody of Sherry. He also sought interim custody of Sherry and served an order to show cause on Plaintiff to that effect.

On or about August 18, 1986, five days after the order to show cause for interim custody was signed, the Grandmother filed a police report alleging that Orbach had threatened to kidnap Sherry and harm Plaintiff. She also told the police that she had witnessed Orbach sexually abuse Sherry some months earlier. The police notified the New York State Child Abuse Hotline ("Hotline") and they notified BSPCC.[2] Shortly thereafter BSPCC instituted a neglect proceeding against Orbach and on September 11, 1986, after additional investigation, BSPCC filed a second petition

charging Orbach with sexual abuse and the Plaintiff with neglect. LAS[3] was then appointed Sherry's Law Guardian.

On September 23, 1986, Family Court Judge Jeffrey Gallet ordered Plaintiff to produce Sherry for an interview with a BSPCC caseworker. On October 2, 1986, following a discussion in chambers with Judge Gallet and BSPCC, the petitioner, Plaintiff and Orbach consented to a remand of Sherry to the Commissioner of Social Services ("Commissioner"). Sherry continued to reside with Plaintiff on the express condition that she produce Sherry at BSPCC for a psychological evaluation and that both she and Orbach undergo psychiatric examinations.

On October 17, 1986, Judge Gallet advised the Plaintiff that if she did not appear for her psychological examination the Commissioner would be authorized to remove Sherry from her custody. On October 21, 1986, BSPCC requested that Sherry be removed from Plaintiff's custody because Plaintiff failed to appear for the prearranged psychological examination. In addition, the Grandmother failed to comply with a BSPCC request to bring Sherry to Family Court that day. Judge Gallet signed the Order of Removal (the "Order"), indicating his concern for Sherry's welfare. Although LAS, who was also present, did not object to the Order they reserved their right to do so in the future.

The following day Plaintiff moved to vacate the Order on the grounds that there had been no evidentiary hearing, as required by § 1027 of the Family Court Act, prior to the Order's issuance. Judge Gallet indicated that, inasmuch as the child had been remanded to the Commissioner by consent, § 1027 was inapplicable. After hearing testimony from LAS and BSPCC,

---

**2.** BSPCC is a child protective agency authorized pursuant to Article 10 of the New York Family Court Act to institute abuse and neglect proceedings. They have entered into a contract with the New York City Human Resources Administration to investigate reports of abuse and neglect and prosecute abuse and neglect petitions in New York State Family Court. *See* Judiciary Law, Family Court Act §§ 822(b), 119(a), and 1013.

**3.** LAS is a private not for profit legal services corporation managed by a board of directors, none of whom are government officials. It is organized under the laws of New York and exists independent of any state or local regulatory authority. Pursuant to a contract with New York State it provides legal representation to children who are the subject of child protective, delinquency and other proceedings in the Family Court.

Judge Gallet found a high potential for emotional harm to the child and therefore denied Plaintiff's motion. On October 27, 1986, Plaintiff's subsequent application to the Appellate Division to vacate the Order was denied and Sherry was placed in Ohel's [4] custody.

On November 19, 1986, Judge Gallet granted BSPCC's motion to withdraw its petition against Orbach, because it was unable to make out a *prima facie* case against him, and also to amend its petition against Plaintiff, charging her with impairing Sherry's emotional welfare. While Plaintiff did not object to the withdrawal of the petition against Orbach, she did argue that the petition against her should have been dismissed as well. The Family Court also ordered that the neglect and custody proceedings be consolidated in Family Court. At that time, Plaintiff also requested that Sherry be returned to her custody. LAS indicated that although it initially opposed removal, it now believed, based on additional information and investigation, that remand to the Commissioner was appropriate.

Plaintiff reported that on November 17, 1986, Sherry told her that Orbach "hurt her" again. Sometime after that Plaintiff registered a complaint with the Hotline regarding this latest accusation. On January 6, 1987, after hearing testimony that the charges had been investigated, Family Court Judge Leon Deutsch, (who was substituted for Judge Gallet) found the complaint to be specious. On January 27, 1987, Plaintiff requested a § 1028 hearing.[5] The following day, however, she voluntarily waived her right to a hearing and agreed to terminate the visitation hearing indicating that she would abide by whatever terms Judge Deutsch ordered.

In January 1988, Plaintiff moved to dismiss the neglect proceeding charging that BSPCC and Ohel were brainwashing Sherry, and also requested that LAS be relieved as Sherry's Law Guardian because it had failed to investigate her charges. Both requests were denied. Throughout the entire neglect proceeding Plaintiff claimed that the Defendants conspired with one another for the sole purpose of depriving her of custody of Sherry. Effective January 31, 1988, Orbach was awarded temporary custody of Sherry and Plaintiff was granted expanded visitation privileges.

During the course of the neglect proceedings, Judge Deutsch interviewed Sherry, *in camera*, on several occasions. Plaintiff's requests for the minutes of these meetings was denied. On July 14, 1988, Judge Deutsch dismissed the neglect petition finding that Sherry's best interests would be adequately protected by the custody proceeding then pending before him. He then held, *inter alia*, that Plaintiff was guilty of neglect and that her allegations of conspiracy between Ohel, BSPCC and Orbach were absurd. Plaintiff appealed from this order, but on October 20, 1988, the Appellate Division granted a cross-motion dismissing the appeal.

On November 21, 1988, following the custody hearing, Judge Deutsch awarded Orbach sole custody of Sherry, with unsupervised visitation to the Plaintiff. He found, *inter alia*, by clear and convincing evidence, that it was in Sherry's best interests to remain in her father's custody.

Plaintiff subsequently appealed both the custody determination and the dismissal of the neglect proceeding [6] to the Appellate Division. On May 30, 1989, that court affirmed the custody award and held that Plaintiff's other contentions, including her claim that her Constitutional Rights had been violated, were without merit. The Appellate Division, did, however, remand

---

4. Ohel is a specialized foster care agency in the Borough Park section of Brooklyn that contracts with the City of New York to provide residential and foster boarding home care to Orthodox Jewish and Hasidic children.

5. § 1028 of the Family Court Act is entitled "Application to return child temporarily removed."

6. The Appellate Division dismissed Plaintiff's appeal from the order of July 14, 1988, because Plaintiff was not aggrieved by the Family Court's dismissal.

the question of Plaintiff's visitation rights to the Family Court for further proceedings. In July 1989, after a full hearing, the Family Court ordered that Plaintiff's visitation privileges be temporarily suspended ("Visitation Order"). On August 1, 1989, Plaintiff filed a Notice of Appeal seeking Appellate review of the Visitation Order which had not been perfected when she commenced litigation in this Court. In the interim, Plaintiff also sought leave to appeal to the Court of Appeals from the May 30, 1989, decision of the Appellate Division. On September 12, 1989, the Court of Appeals denied Plaintiff's application on the ground that there had been no final determination. Unfortunately, despite the passage of many years and numerous legal proceedings, this sad chapter in Sherry's life is not yet concluded. Plaintiff, in an attempt to assault the state court judgment, opened yet another front by initiating litigation in this Court.

### The Federal Action

In essence, Plaintiff has reiterated the issues argued to the Appellate Division. However, in order to resolve the motion it is necessary to examine the charges in the amended complaint which, as to each of the defendants, may be summarized as follows.

### Individual Conduct

*BSPCC* violated Plaintiff's rights by: (a) conspiring with Orbach to dismiss the petition against him; (b) filing a second petition falsely charging the Plaintiff with neglect; and (c) misrepresenting to Plaintiff that Sherry would be returned to her custody if she agreed to dismiss the charges against Orbach.

*Ohel* violated Plaintiff's rights by: (a) permitting Orbach unauthorized visits with Sherry; (b) coercing Sherry to recant the charges against Orbach and withdraw her affections from Plaintiff; (c) hindering additional investigations of Orbach warranted by new allegations that he sexually abused Sherry while she was in foster care; and (d) testifying falsely before the Family Court.

*LAS* violated Plaintiff's rights by: (a) making false statements to the Appellate Division regarding the need to place Sherry in foster care; (b) suppressing evidence that would corroborate the charges of sexual abuse against Orbach; (c) contending at the custody hearing that statements made by Sherry during *in camera* interviews provided proof that she was guilty of neglect; (d) failing to properly investigate bruises on Sherry's body that Plaintiff noticed after Orbach was awarded temporary custody; and (e) failing to investigate Plaintiff's charges that Sherry's anorexia, diagnosed in March of 1989, was evidence of possible sexual abuse.

### Joint Conduct

*BSPCC* and *LAS* violated Plaintiff's rights by: (a) failing to oppose Judge Gallet when he threatened to remove Sherry from her custody; and (b) failing to bring to the attention of the Family Court and the Appellate Division alleged defects in the Order, i.e., the statement therein that a hearing pursuant to § 1027 of the Family Court Act had been held.

*BSPCC* and *Ohel* violated Plaintiff's rights by seeking to restrict her visitation privileges with Sherry.

*BSPCC, LAS, Ohel* and *Orbach* violated her rights by permitting the Family Court to interview Sherry *in camera*.

### DISCUSSION

There are many reasons why this amended complaint should be dismissed. In support of their motion to dismiss the Defendants rely on the following grounds: (1) lack of subject matter jurisdiction; (2) failure to state a claim upon which relief can be granted; (3) abstention; (4) *res judicata* and collateral estoppel; and 5) the statute of limitations. Long recognized principles of law justify and compel this Court to grant Defendants' motion to dismiss. The Court will enunciate the relevant principles as they apply to the individual defendants *seriatim*.

## I. LACK OF SUBJECT MATTER JURISDICTION

### A. Domestic Relations Exception

As a threshold matter, the Court acknowledges that the relationship between parent and child is constitutionally protected. *See Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 *reh'g denied*, 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978); *Stanley v. Illinois*, 405 U.S. 645, 658, 92 S.Ct. 1208, 1216, 31 L.Ed.2d 551 (1972); *Meyer v. Nebraska*, 262 U.S. 390, 399–401, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923). A century ago, however, the Supreme Court, sagely circumscribed the jurisdiction of federal courts as regards domestic relations when it held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ex parte Burrus*, 136 U.S. 586, 594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890). *See also Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 383–384, 50 S.Ct. 154, 154–155, 74 L.Ed. 489 (1930). This Court applied this principle in *Lhotan v. D'elia*, 415 F.Supp. 826 (E.D.N.Y.1976) when it held "[f]ederal courts do not adjudicate cases involving the custody of minors or right of visitation [because t]hat is the function of the States." *Id.* at 827. (dismissing foster parents' suit seeking writ of *habeas corpus* requiring director of county department of social services to direct placement of foster children).

True, on rare occasions, the federal courts have gingerly forayed into the domestic relations arena *but only* to resolve claims that are traditionally adjudicated in federal courts. Federal courts have heard cases "whose essence is in, for example, tort or contract, and which do not require the federal court to exceed its competence." *Bennett v. Bennett*, 682 F.2d 1039, 1042 (D.C.Cir.1982) (federal court may award monetary relief in tort action stemming from child abduction, however, it could not enjoin defendant from interfering with plaintiff's custody rights because that would require an inquiry into the present interests of minor children); *Wasserman v.* *Wasserman*, 671 F.2d 832 (4th Cir.), *cert. denied*, 459 U.S. 1014, 103 S.Ct. 372, 74 L.Ed.2d 507 (1982) (federal court competent to decide torts of child enticement and intentional infliction of emotional distress in case where custody of child was not in issue); *Lloyd v. Loeffler*, 694 F.2d 489 (7th Cir.1982) (jurisdiction upheld over tort damage actions for interference with child custody, where custody was not in dispute); *Richie v. Richie*, 186 F.Supp. 592 (E.D.N.Y. 1960); and *Zimmerman v. Zimmerman*, 395 F.Supp. 719 (E.D.Pa.1975) (federal court competent to decide question of support payment due under contract incorporated in divorce decree where child custody not in dispute).

 If, however, in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation matters, the action must be dismissed. *Brenhouse v. Bloch*, 418 F.Supp. 412, 415–416 (S.D.N.Y.1976) (court lacked jurisdiction in action for damages resulting from an alleged breach of a separation agreement because in order to decide whether the contract was breached the court would have to examine the custody and visitation rights). In the instant action, Plaintiff explicitly requests that the Court review and overturn a custody award. Furthermore, even if the Court were only asked to decide the question of damages it could not do so without analyzing the basis for the custody determination. Such action this Court is not equipped nor is it prepared to undertake.

 Moreover, where constitutional claims arising out of a domestic relations dispute are frivolous the action must be dismissed because it is an abortive attempt to involve the federal courts in domestic relations matters best left to the states. *Hernstadt v. Hernstadt*, 373 F.2d 316 (2d Cir.1967). Plaintiff's claim that Defendants conduct violated her Constitutional Rights has already been dismissed, as meritless, by the Appellate Division, *Brooklyn Soc'y for the Prevention of Cruelty to Children v. Neustein*, 150 A.D.2d 773, 774, 543 N.Y.S.2d 279 (2d Dep't 1989), leading this Court to conclude that Plaintiff's sole

purpose in bringing this domestic relations dispute to the federal courts is a frivolous attempt to engage the Court in a matter over which it has no jurisdiction.

Plaintiff argues that this action seeks merely to review the constitutionality of the neglect proceedings, and is not concerned with the issue of child custody. Such a claim is disingenuous because the neglect proceeding involved the question of Sherry's custody and Plaintiff, in this action, specifically asks the Court to review and overturn the custody and visitation rulings made by the Family Court and the Appellate Division. Therefore, the Court would ineluctably be drawn into a custody dispute between Plaintiff and Orbach, something the Court can and will not do.

### B. Habeas Corpus [7]

■ In *Lehman v. Lycoming County Children's Services*, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), the Supreme Court categorically refused to extend the writ of *habeas corpus* to confer jurisdiction on federal courts to consider collateral challenges to state court judgments that involuntarily terminate parental rights. In support of its holding the Court noted that for "at least 100 years after passage of the statute in 1867, the writ was not used in child-custody cases. This history strongly suggests that the extension of federal habeas corpus to state custody cases was never contemplated by Congress, nor understood by the Bar to have been an available remedy." *Id.* at 511 n. 14, 102 S.Ct. at 3237 n. 14. In *Lehman*, a mother sought habeas corpus relief after a state court terminated her parental rights and placed her children in foster care. The Court observed that the plaintiff was not litigating any liberty interest of her children, but merely the interest in her own parental rights. *Id.* at 511, 102 S.Ct. at 3237. While Plaintiff acknowledges that "habeas corpus relief is not available in custody

cases", *Plaintiff's Memorandum of Law at Point VII*, she argues that this is not a custody case but rather an "extraordinary case of gross violations of [her] constitutional rights to the custody of her child." *Id.* The mere restatement of Plaintiff's argument is an admission that the gravamen of this case does involve the question of custody. Her position is indistinguishable from that of the *Lehman* plaintiff who was denied jurisdiction.

■ There is another reason for dismissal. Assuming jurisdiction, Plaintiff's petition for a writ of habeas corpus would have to be dismissed because she has failed to exhaust available state remedies. *Thomas v. Beth Israel Hosp. Inc.*, 710 F.Supp. 935, 939 (S.D.N.Y.1989). *See Boothe v. Superintendent, Woodbourne Correctional Facility*, 656 F.2d 27, 31 (2d Cir.1981); *Arce v. Henderson*, 477 F.Supp. 71, 73 (S.D.N.Y. 1979), *aff'd*, 636 F.2d 1200 (2d Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1989, 68 L.Ed.2d 305 (1981). Since Plaintiff is still awaiting a decision from the Appellate Division regarding the Visitation Order she clearly has not exhausted the available state remedies. "Moreover federal courts will not permit a plaintiff to circumvent the exhaustion requirements of 28 U.S.C. § 2254 by attaching claims for monetary damages to an application for habeas relief." *Thomas*, 710 F.Supp. at 944. *See Bullock v. Cuyler*, 463 F.Supp. 40, 43 (E.D. Pa.1978) (federal court must abstain where plaintiff's primary concern was to secure a pre-release furlough rather than obtain monetary damages for alleged deprivation of constitutional rights). The Court notes in passing, that, in any event, Plaintiff's habeas claim could not lie against BSPCC, the City, LAS or Ohel because they do not have custody of the child. Defendants' motion to dismiss is hereby granted because the Court lacks subject matter jurisdiction.

---

7. The Amended Complaint does not specify the statutory provision relied upon for the requested habeas corpus relief. The vehicle for relief from a state court decision is § 2254(a), which provides that, "The Supreme Court, a Justice thereof, a circuit judge, or a district judge shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

## II. ABSTENTION

*Younger Abstention*

■ Again, assuming jurisdiction, this Court would nevertheless be compelled to abstain under the principles of federalism and comity as enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny.[8] In determining whether or not abstention is appropriate the Court would have to consider (1) whether a state civil procedure is pending at the time the federal litigation is commenced; (2) the magnitude of the state's interest in the proceeding; and (3) whether the federal plaintiff had the opportunity to litigate the federal issues in state court. *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 224 (2d Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); *Donkor v. City of New York Human Resources Admin.,* 673 F.Supp. 1221, 1225 (S.D.N.Y.1987).

■ In addition to Plaintiff's request for sole custody of Sherry and restricted visitation by Orbach she also alleges civil rights violation under § 1983. Although there is no requirement that a plaintiff exhaust state remedies before bringing a § 1983 action in federal court, *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961), *Younger* does impose one if there is a state proceeding pending against the federal plaintiff when she files her federal suit. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482, *reh'g denied,* 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975). "[T]he considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that [her] chances of success on appeal are not auspicious." *Id.* 95 S.Ct. at 1211.

■ All the elements justifying *Younger* abstention are present in this case. At the

time Plaintiff commenced this action *her* appeal of the Visitation Order was still pending before the Appellate Division Second Department. It is immaterial that a portion of the Plaintiff's proceeding, i.e. the question of her visitation rights, is still pending before the Appellate Division Second Department. "It is well settled that for purposes of *Younger* abstention a proceeding is considered pending until all appellate court remedies have been exhausted." *Simmonds v. Deutsch,* No. 88–3881 slip op., 1989 WL 32835, 1989 WL 32835 (E.D.N.Y. March 27, 1989); *Reinhardt v. Commonwealth of Mass. Dep't of Social Serv.,* 715 F.Supp. 1253, 1255 (S.D.N.Y. 1989). Plaintiff's attempt to proceed simultaneously in both forums does not appear to be an innocent error, rather it strikes this Court as a calculated, however, ill conceived, attempt to end run established legal principles and avoid a forum she perceives as hostile towards her.

As regards the second element, it hardly bears repeating that state courts have a paramount if not exclusive interest in child custody cases. "Questions of family relations, especially when issues of custody and child abuse are involved, are traditionally an area of state concern." *Reinhardt* 715 F.Supp. at 1256, *citing Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979). "In this narrow area of the law, we should be especially careful to avoid unnecessary or untimely interference with the State's administration of its domestic policies." *Mendez v. Heller,* 530 F.2d 457, 461 (2d Cir.1976). That New York, in particular, has a "compelling interest in child-custody disputes involving allegations of child abuse is reflected in the 1970 amendments to the [Family Court] Act which created a new Article 10 to establish a separate child abuse proceeding for the expeditious and expert handling of child abuse cases." *Donkor,* 673 F.Supp. at 1226.

---

8. Although *Younger* abstention was first enunciated in the context of a pending state criminal proceeding it has been extended to pending state civil proceedings, *Judice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52

L.Ed.2d 486 (1977), including, cases of child abuse. *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Donkor v. City of New York Human Resources Admin. Special Services for Children,* 673 F.Supp. 1221 (S.D.N.Y. 1987).

The third element is satisfied since Plaintiff has had more than sufficient opportunity to litigate the federal issues in state courts, which are fully competent to decide federal constitutional questions. *Moore,* 442 U.S. at 430, 99 S.Ct. at 2380. As previously noted, Plaintiff has taken full advantage of the state court, where she vigorously asserted the claim that the Defendants violated her Constitutional rights.

Finally, Plaintiff has not asserted, nor does the Court find, any exceptions to the *Younger* doctrine, i.e., state court proceeding motivated by a desire to harass or is conducted in bad faith, or the challenged statute is flagrantly and patently unconstitutional, *Huffman,* 420 U.S. at 611, 95 S.Ct. at 1211, to warrant our intervention at this time.

### III. RES JUDICATA and COLLATERAL ESTOPPEL

The doctrines of *res judicata* and collateral estoppel are fatal stumbling blocks to Plaintiff's attempt to relitigate claims already litigated and decided in state court, or to assert new claims that could have been raised in such earlier proceedings. *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir.1985). *See generally* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4402 (1981).

#### A. Res Judicata

The federal courts are required to give preclusive effect to a state court judgment whenever the courts of the state which rendered the judgment would do so. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Manfra v. Koch,* 666 F.Supp. 637, 640 (S.D.N.Y.1987), *aff'd,* 868 F.2d 1267 (2d Cir.1988). Under New York law, a cause of action arises from the same transaction and is barred by the prior judgment, "where the same foundation facts serve as a predicate for each proceeding" and merely alleging a variation of the facts or seeking alternative relief will not justify subsequent litigation where the "same gravamen of the wrong" is at issue. *Hasen-stab v. City of New York,* 664 F.Supp. 95, 98 (S.D.N.Y.1987). Applying these principles, except as to the question of Plaintiff's visitation rights, the Court concludes that the doctrine of *res judicata* precludes Plaintiff's collateral attack. Plaintiff is suing the identical parties for a claim based on the same foundation of facts arising from the very same events and she can not circumvent the doctrine of *res judicata* merely by relabelling her cause of action. *See Id.* As with the plaintiff in *Hasenstab,* this Plaintiff is suing the Defendants for the same violations and is simply renaming her cause of action as a violation of her civil rights under section 1983. As earlier noted, the Appellate Division found Plaintiff's identical claim, that her Constitutional Rights were violated, was "without merit". *Brooklyn Soc'y,* 150 A.D.2d at 774, 543 N.Y.S.2d 279. Furthermore, Plaintiff's reliance on *Lombard v. Board of Educ.,* 502 F.2d 631 (2d Cir.), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1974), is misplaced. Unlike there, Plaintiff due process issues were raised in state court and "where a constitutional issue is actually raised in the state court ... the litigant has made [her] choice and may not have two bites of the cherry." *Id.* at 636–637.

#### B. Collateral Estoppel

As with the doctrine of *res judicata, supra,* a federal court must give the same preclusive effect to judgments involving allegedly identical issues as would the law of the State rendering the judgment. *Migra,* 465 U.S. at 81, 104 S.Ct. at 896; *Murphy,* 761 F.2d at 881.

Under New York law, "the doctrine of collateral estoppel ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Murphy,* 761 F.2d at 881, (*quoting Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984). In order to invoke collateral estoppel "[t]here must be an identity of issue

which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling." *Murphy*, 761 F.2d at 882 (*quoting Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)).

■■■ Except as to the question of Plaintiff's visitation rights, the pleadings support the application of collateral estoppel in this case. Plaintiff has already litigated the identical issues, raised herein, in a thorough and exhaustive brief to the Appellate Division, which held, albeit *sub silentio*, that Plaintiff's contentions were without merit. *Brooklyn Soc'y*, 150 A.D.2d at 774, 543 N.Y.S.2d 279. The fact that the Appellate Division failed to enumerate the claims in their decision is immaterial. *Winters v. Lavine*, 574 F.2d 46 (2d Cir.1978). "[I]t is entirely possible for a court to consider and reject a particular claim presented to it without any express discussion of or allusion to that claim." *Id.* at 61.

Finally, Plaintiff may not relitigate the same issues merely because Ohel and the City were not parties to the state court litigation. "Under the modern doctrine of collateral estoppel, a party who has had a full and fair opportunity to litigate an issue and lost in prior litigation may be foreclosed from relitigating that issue in subsequent cases, even where the opposing party is different in each case." *Cliff v. Internal Revenue Service*, 496 F.Supp. 568, 576 (S.D.N.Y.1980); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

## IV. FAILURE TO STATE A CLAIM

Concerning Defendants' motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court accepts as true the material facts alleged in the

Amended Complaint, *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), *cert. denied*, 464 U.S. 890, 104 S.Ct. 231, 78 L.Ed.2d 224 *reh'g denied*, 464 U.S. 1003, 104 S.Ct. 512, 78 L.Ed.2d 700 (1983), which must be liberally construed and allegations considered in the light most favorable to the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, the Court may dismiss the amended complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, we shall consider, *seriatim*, each of Plaintiff's claims.

### A. Section 1985(2)[9]

The first half of Section 1985(2), Title 42 United States Code, ("§ 1985(2)(I)") provides a private cause of action for damages based on certain forms of interference with *federal* judicial proceedings, *Kimble v. D.J. McDuffy, Inc.*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (White, J., dissenting from denial of certiorari); *Kush v. Rutledge*, 460 U.S. 719, 724, 103 S.Ct. 1483, 1486, 75 L.Ed.2d 413 (1983). Section 1985(2)(I) covers the situation where

> two or more persons in any State or Territory *conspire* to deter, by force, intimidation, or threat, any party or witness in any *court of the United States* from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any ver-

---

**9.** It is clear from Plaintiff's papers that Plaintiff's attorney did indeed intend to rely on this provision rather than the more familiar 42 U.S.C. § 1985(3). *See, e.g., Answering Affidavit of Amy Neustein*, dated January 19, 1990, at ¶ 4; *Answering Affidavit of Steven J. Mandel*, dated January 19, 1990, at ¶ 30.

**344**

dict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror.

42 U.S.C. § 1985(2)(I) (emphasis added). Section 1985(2)(I) has no application to this case whatsoever because there are no federal proceedings which the Defendants are alleged to have disrupted.

The second half of Section 1985(2) ("§ 1985(2)(II)") creates a similar cause of action for interference with *state* judicial proceedings, *Kimble*, 454 U.S. at 1110, 102 S.Ct. at 687. Section 1985(2)(II) covers the situation where

> two or more persons *conspire* for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to *deny to any citizen the equal protection of the laws*, or to injure him or his property for lawfully enforcing, or attempting to enforce, the rights of any person, or class of persons, *to the equal protection of the laws*.

42 U.S.C. § 1985(2)(II) (emphasis added). Although § 1985(2)(II) might arguably be applicable, a reasonable investigation of the law would have revealed that assertion of § 1985(2)(II) in this context was meritless.

■ A claim under § 1985(2)(II) requires the plaintiff allege "that [s]he was a member of a protected class, that the [D]efendants conspired to deprive [her] of [her] constitutional rights, that the defendants acted with class-based, invidiously discriminatory animus, and that [s]he suffered damages as a result of the defendants' actions." *Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir.1989); *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987); *A & A Concrete, Inc., v. The White Mountain Apache Tribe*, 676 F.2d 1330, 1333 (9th Cir.1982), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986); *Housand v. Heiman*, 594 F.2d 923, 925 (2d Cir.1979);

*Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir.1975); *Thomas*, 710 F.Supp. at 941; *Singer v. Bell*, 613 F.Supp. 198, 201 (S.D.N.Y.1985). This means that under under § 1985(2)(II) " 'the intended victims [of discrimination] must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." *Gleason*, 869 F.2d at 695 (*quoting United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 850, 103 S.Ct. 3352, 3367, 77 L.Ed.2d 1049 (1983) (Blackmun, J., dissenting)).

■ Plaintiff's only allegation with regard to class-based discrimination appears in an Answering Affidavit ("Affidavit")[10] filed January 19, 1990, in conjunction with her memorandum of law opposing the Defendants' motion to dismiss. "Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court can exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988); *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 (1969 & Supp.1986). Because the Plaintiff has had more than ample procedural opportunities the Court will not convert this Affidavit into a motion for summary judgment. Inasmuch as the amended complaint is totally devoid of any reference to class-based discrimination Plaintiff has failed to state a claim under § 1985(2)(II). As a matter of fact, the pleadings are redolent with the hostility of an intrafamily squabble, not invidious class based discrimination.

Even assuming Plaintiff had successfully alleged class based discrimination her vague and general allegations of conspir-

---

**10.** After the Defendants pointed out that Plaintiff had failed to state a claim under § 1985(2) she made a feeble attempt to create an obviously imaginary class by alleging that she is part of a class of Orthodox Jewish women who had the temerity to accuse their husbands, Orthodox Jewish men, of sexually abusing their children.

acy would warrant dismissal of the section 1985 claim. *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Ellentuck v. Klein,* 570 F.2d 414, 426 (2d Cir.1978).

*B. Section 1983*

▮ In order to state a claim under section 1983 Plaintiff must

prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second the plaintiff must show that the defendant deprived him of this constitutional right *"under color of any statute, ordinance, regulation, custom, or usage, of any State* or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

*Fine v. City of New York,* 529 F.2d 70, 73 (2d Cir.1975) (emphasis added) (*quoting, Adickes v. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970)). "Moreover, in this Circuit a civil rights complaint 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient.'" *Thomas,* 710 F.Supp. at 942 (*quoting, Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987)). Plaintiff's claims concerning conspiracy, cover-ups, and falsification are so vague, murky and conclusory that they fail to establish a cause of action under section 1983.

*The City*

▮ It is well settled that a municipality can be found liable under section 1983 only where the municipality itself causes the constitutional violation; *respondeat superior* or vicarious liability are not available under section 1983. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct.

1197, 1203, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478–479, 106 S.Ct. 1292, 1297–1298, 89 L.Ed.2d 452 (1986); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff's amended complaint explicitly states that the City, at all times and in all respects, acted only through their agents, BSPCC, Ohel and LAS.

▮ A municipality may be sued for damages under section 1983 only when the alleged constitutional violations have been committed pursuant to an official policy or custom. *City of Canton,* 109 S.Ct. at 1203; *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. Plaintiff has failed to so allege. In her Affidavit Plaintiff alleges that the failure of two municipal employees [11] to respond to her charges regarding the removal proceedings is tantamount to a finding that the BSPCC and LAS acted pursuant to municipal policy. As a legal principle this is without merit and in all events, for reasons pointed out above, the Court can not consider the information in the Affidavit. Consequently, since the amended complaint alleges neither direct participation by the City nor an official City policy or custom, the Plaintiff has failed to state a claim under section 1983.[12]

*LAS*

▮ LAS attorneys do not represent their clients under color of state law. "Although the Society by contract has undertaken to make available legal services [to children in Family Court proceedings], its history, constitution, bylaws, organization and management definitely establish that it is a private institution in no manner under State or City supervision or control." *Lefcourt v. Legal Aid Society,* 445 F.2d 1150, 1157 (2d Cir.1971); *Wallace v. Kern,* 481

---

**11.** A Deputy Commissioner at the Department of Human Resources and an Assistant Corporation Counsel.

**12.** Were the Court to consider the allegations in the Affidavit it would still not stave off a motion to dismiss. "While a single decision may satisfy Monell's municipal policy requirement, that decision must have been properly made by . . . an

official who 'possesses final authority to establish municipal policy with respect to the challenged action.'" *Gobel v. Maricopa County,* 867 F.2d 1201 (9th Cir.1989), *citing, Pembauer,* 475 U.S. at 479–481, 106 S.Ct. at 1298–1299. It is evident that these employees lacked the requisite final authority to establish municipal policy in this regard.

F.2d 621, 622 (2d Cir.1973), *cert. denied,* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974); *Polk v. Lewis,* 499 F.Supp. 302, 304 (S.D.N.Y.1980). Moreover, "[i]t is the requirement that the *guardian ad litem* must exercise independent, professional judgment that is crucial to the determination of whether a *guardian ad litem* acts under color of state law and is therefore a person liable under § 1983." *Meeker v. Kercher,* 782 F.2d 153, 155 (10th Cir.1986). Throughout the course of the neglect proceedings LAS did no more than exercise its independent professional legal judgment which of course creates no liability.

*BSPCC*

▇▇▇▇ Plaintiff has also attempted to bring BSPCC under its umbrella of liability, but she has ignored the fact that BSPCC in the role of a state prosecutor is entitled to absolute governmental immunity in an action for damages under section 1983 for its conduct in initiating a prosecution, even when charged with knowingly using false evidence. *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). Recognizing that "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to those acts", *Butz v. Economou,* 438 U.S. 478, 515, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978), this Circuit has held that individuals who initiate and prosecute child protective orders are entitled to absolute immunity. *Walden v. Wishengrad,* 745 F.2d 149, 152 (2d Cir.1984) (social services prosecutor entitled to absolute immunity). Clearly, BSPCC is entitled to absolute immunity with regard to its filing of the neglect petition against Plaintiff.

As regards the other conduct that BSPCC allegedly engaged in, courts have attempted to analyze the functions of a prosecutor to determine when he is entitled to absolute immunity. *See Powers v. Coe,* 728 F.2d 97, 103–07 (2d Cir.1984). Even if true, the additional conduct is all within the scope of BSPCC's prosecutorial activities and consequently BSPCC is entitled to absolute immunity for those acts as well. To hold otherwise would chill the legitimate activities of BSPCC and undermine its performance.

*Ohel*

"In accepting and retaining custody of children alleged to have been 'neglected' or 'abandoned,' child-caring institutions of the type we have in this case perform a public function" and therefore act under the color of state law for the purpose of section 1983. *Perez v. Sugarman,* 499 F.2d 761, 765 (2d Cir.1974). This conclusion, by itself, is insufficient to state a claim under section 1983. There must be more.

▇▇▇▇ If a complaint under section 1983 is to survive a motion to dismiss it must make specific factual allegations as to the illegal conduct and resultant harm. *Fonte,* 848 F.2d at 25–26. Plaintiff's allegations that Ohel's conduct deprived her of her civil rights are stated in most conclusory terms. No details were offered in support of these claims and thus, for lack of specificity, she has failed to allege a violation of her civil rights. Moreover, her claim that transporting Sherry to *in camera* interviews with the Family Court deprived her of her right to due process is unsubstantiated and totally without merit. *See Matter of Fawn S.,* 123 A.D.2d 871, 507 N.Y.S.2d 651 (2d Dep't 1986) (*in camera* interviews of child are permissible in Article 10 proceedings).

*Orbach*

▇▇▇▇ It is well settled that a private party is subject to liability under § 1983 if he conspires with or willfully engages in joint activity with the State or its agents, *Adickes,* 398 U.S. at 152, 90 S.Ct. at 1605, even if the State agent is immune from liability. *Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). Again allegations that Orbach engaged in a conspiracy with BSPCC, Ohel and LAS are no more than naked improbable unsubstantiated assertions without any specifics. They do not state a valid claim for relief under section 1983. *Ellentuck* at 426; *Ostrer* at 553.

## V. STATUTE OF LIMITATIONS

 This action was commenced on October 19, 1989, based, in part, on claims arising from violations of 42 U.S.C. § 1983. Section 1983 claims are governed by the law of the forum state, *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and therefor in New York, the three year statute of limitations for personal injury actions governs. *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989). Consequently, any claims arising prior to October 20, 1986, are time-barred.[13]

### CONCLUSION

The Defendants' motion to dismiss is granted because: (1) the Court lacks subject matter jurisdiction in domestic relations matters and over federal *habeas corpus* claims based on state court determinations of child custody; (2) the Plaintiff has failed to state a claim for which relief can be granted under 42 U.S.C. §§ 1983 and 1985(2); and (3) *Younger* abstention precludes the instant action. Additionally, the motion to dismiss, made by LAS, Ohel, Orbach and the City, on the grounds of collateral estoppel, except as to Plaintiff's visitation rights, is granted. Except as to Plaintiff's vistation rights, LAS, Ohel, Orbach and the City's motion to dismiss on the grounds of *res judicata* is hereby granted. Lastly, LAS, Ohel, Orbach and the City's motion to dismiss on the grounds of statute of limitations is hereby granted.

In view of the fact that there were numerous grounds to support dismissal of this action, sanctions pursuant to Rule 11, Fed.R.Civ.P. will be imposed by a separate order immediately preceding this order of dismissal.

SO ORDERED.

---

**13.** With respect to BSPCC, claims in ¶¶ 16–27 of the amended complaint are time barred; with respect to LAS, claims in ¶¶ 24–27 of the amended complaint are time barred; with respect to the City, claims in ¶¶ 16–27 of the amended complaint are time-barred; and finally with respect to Orbach, the claim in ¶ 18 of the amended complaint is time barred.