Salvatore FARIELLO, Plaintiffs,

v.

William RODRIGUEZ, William Ekadis, Arthur J. Abrams, Howard Berler, Marion T. McNulty, Edward Heepe, Jayne Ann McPartlin, Michael F. Schwartz, Suffolk County Department of Social Services, the County of Suffolk, Eric Sackstein, Karen Marotta, Michael Marotta, Marilyn Drewry, Nassau–Suffolk Law Services Committee, Inc., Joseph R. Erazo, Joseph Lima, Nassau County Medical Center, James Madden, University Hospital Stony Brook, All Family Court and Supreme Court Judges and Hearing Examiners in the State of New York whether elected or appointed, in their official capacity only, Defendants.

CV 92–5895 (ADS).

United States District Court,
E.D. New York.

May 8, 1993.

Salvatore Fariello, pro se.

Robert Abrams, N.Y. State Atty. Gen., Mineola, NY, for defendants William Rodriguez, William Ekadis, Arthur J. Abrams, Howard Berler, Marion T. McNulty, Edward Heepe, James Madden, University Hosp. Stony Brook, and All Family Court Judges

and Supreme Court Judges and Hearing Examiners in the State of N.Y.; by Asst. Atty. Gen. Robert Drinan.

Dorsey & Whitney, New York City, for defendant Jayne Ann McPartlin; by Jeffrey Samberg.

Robert Cimino, Suffolk County Atty., Hauppauge, NY, for defendants Michael F. Schwartz, Suffolk County Dept. of Social Services, and County of Suffolk; by Brian Mulholland.

Estrin, Sackstein & Kenny, Port Jefferson, NY, for defendants Karen Marotta and Michael Marotta; by Eric A. Sackstein.

John J. Andrews, Port Jefferson, NY, for defendant Eric Sackstein.

Garbarini & Scher, New York City, for defendants Nassau–Suffolk Law Services Committee, Inc. and Marilyn Drewry; by Leonard Weinstock.

Robert M. Schmidt, Nassau County Atty., Mineola, NY, for defendants Joseph R. Erazo, Joseph Lima, and Nassau County Medical Center; by James Gallagher.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The plaintiff Salvatore Fariello ("Fariello"), on behalf of his minor child and himself, filed a closely-spaced, forty-page complaint alleging violations of eight federal statutes, eight amendments to the United States Constitution, and two articles of the Constitution. In a decision rendered on the record on February 19, 1993 the Court: (1) discontinued that portion of the action commenced by Fariello on behalf of his minor son Jared Fariello; (2) dismissed the complaint against the defendants Nassau–Suffolk Law Services Committee, Inc. ("Law Services") and Marilyn Drewry; and (3) directed Fariello, within ten days from the dated of the Order, to "voluntarily discontinue this action as to all judicial officers possessing absolute immunity, as more fully set forth in the oral decision in the record, or be subject to the possible imposition of sanctions and/or costs and/or attorney's fees" (Order, dated February 19, 1993, at pp. 4–5).

In order to address all outstanding claims in an orderly fashion, the Court further directed that "all remaining defendants who desire to make a motion to dismiss the complaint based upon Fed.R.Civ.P. 12(b)(6), must make the motion returnable on April 16, 1993 at 9:30 AM and it must conform with all provisions of the Federal Rules of Civil Procedure, the Local Civil Rules for the Eastern District of New York, and Judge Spatt's individual rules" (Order, dated February 19, 1993, at p. 5). It is based upon this directive that all remaining defendants presently move to dismiss this "civil rights" complaint, and the plaintiff cross-moves for summary judgment as to many individual defendants.

Subsequent to the Court's dismissal of the complaint against the defendants Law Services and Marilyn Drewry on February 19, 1993, the plaintiff filed an amended complaint and the defendants Law Services and Drewry now move to dismiss the amended complaint for the failure to state a claim.

In motions which were already returnable before this Court, the plaintiff moved for an Order setting a hearing on damages based upon the defaults of the defendants Karen Marotta, Michael Marotta, and Eric Sackstein. Each of these three defendants move to vacate their default in order to permit them to defend their case on the merits.

## BACKGROUND

The Court defers to an excerpted portion of the voluminous complaint to describe the general nature of the plaintiffs claims against these defendants:

"Acting under color of law of the State of New York, defendant's have individually, in their official capacity as officers of the state or as state actors, pursuant to policy, custom and usage, conspired to deprive plaintiffs of their civil rights and have deprived plaintiffs of their civil rights as set forth more fully below. Plaintiffs allege that it is not possible for them to secure in courts of the State of New York the civil rights guaranteed them by the Constitution of the United States *because it is a matter of policy, custom and usage whereunder the discriminatory practices*

*of the State of New York against divorced fathers assumes the force of law due to the persistent practices of New York State officials.* Plaintiffs will prove that these discriminatory practices pervade the Family Court of the State of New York, the Supreme Court of the State of New York, and the Appellate Division of the Supreme Court of the State of New York. Plaintiffs will also prove that by written admission of the Assistant Deputy Counsel of the Unified Court System Office of Court Administration of the State of New York, the New York family courts do not have the financial resources or the manpower to handle the caseload before them, thereby impairing their ability to render justice to plaintiffs...." (Complaint, at pp. 4–5 [emphasis supplied] ).

After a brief discussion of the applicable legal standards, the Court will examine the allegations against each defendant.

### DISCUSSION

#### *Motions for Defaults/Vacate Defaults:*

In the present situation, the plaintiff submitted a certificate of default for the defendants Karen Marotta, Michael Marotta, and Eric Sackstein, pursuant to Local Civil Rule 10(b) of the Eastern District of New York. The plaintiff sought a default judgment based upon these defaults. However, "[f]or good cause shown the court may set aside an entry of default" (Fed.R.Civ.P. 55[c] ), not enter judgment or set a hearing on damages, despite the submission of a clerk's certificate.

According to the Second Circuit, "opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default, despite the absence of a formal Rule 55(c) motion" (*Meehan v. Snow*, 652 F.2d 274, 276 [2d Cir.1981] ). In the present case, only the defendant Karen Marotta filed timely opposition to the plaintiff's motions. The motion as to the defendants Michael Marotta and Eric Sackstein were submitted without opposition. At the present time, however, these two defendants move to vacate their defaults. The Court will first address this motion to vacate the default by the three defendants.

The Court notes at the outset that the Second Circuit does not favor defaults and prefers the resolution of actions on the merits (*See Meehan, supra,* 652 F.2d at p. 277). In evaluating a motion to set aside the entry of default, the Second Circuit stated that:

> "Under Rule 55(c), the principal factors bearing on the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented ... Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits" (*Meehan, supra,* 652 F.2d at p. 277).

Applying this standard, the Court will examine the factors as to each defendant.

■ As to the defendant Karen Marotta, the Court finds that: (1) the default was not willful because it was due to the mistaken belief that she had additional time to respond to the complaint, (2) the defendant has a meritorious defense based upon the alleged failure of the plaintiff to state a claim as to her, and (3) the plaintiff is not prejudiced. Accordingly, the motion by the defendant Karen Marotta to vacate the default is granted and the motion by the plaintiff for a judgment and hearing to assess damages is denied.

■ As to the defendants Michael Marotta and Eric Sackstein, the Court finds that: (1) the default was not willful in that the defendants' attorneys attempted to review the substantial documentary evidence relating to the plaintiff's claim and file the answer on time, albeit it was filed a week late, (2) the defendants have a meritorious defense based upon the alleged failure of the plaintiff to state a claim as to them, and (3) the plaintiff is not prejudiced by vacating the defaults as to these defendants. Accordingly, the motion by the defendants Michael Marotta and Eric Sackstein to vacate their default is granted and the motions by the plaintiff for a judgment and hearing to assess damages as to the defendants Michael Marotta and Eric Sackstein are denied. Having vacated the defaults entered against all three defendants,

the Court will address all the pending motions to dismiss.

Although some of the defendants move, in the alternative, for summary judgment, at this time the Court will only address the Rule 12(b)(6) motions to dismiss.

### Motions to Dismiss:

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" (*Goldman v. Belden*, 754 F.2d 1059, 1065 [2d Cir.1985] [*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)]; *see also Branum v. Clark*, 927 F.2d 698 [2d Cir.1991]). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at·a trial but merely to determine whether the complaint itself is legally sufficient" (*Goldman, supra*, 754 F.2d at p. 1067; *see also Dwares v. City of New York*, 985 F.2d 94, 98–100 [2d Cir.1993]).

In assessing the sufficiency of a pleading on a motion to dismiss, it is well settled that the court must accept the allegations of the complaint as true (*see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 [1993]; *LaBounty v. Adler*, 933 F.2d 121, 123 [2d Cir.1991]; *Procter & Gamble Co. v. Big Apple Indus. Bldgs, Inc.*, 879 F.2d 10, 14 [2d Cir.1989], *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 [1990]), and must construe all reasonable inferences in favor of the plaintiff (*See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 [1974]; *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 [2d Cir.1988], *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 [1989]).

The Court also notes that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8[a][2]), and that "[a]ll pleadings shall be so construed as to do substantial justice" (Fed.R.Civ.P. 8[f]).

The Court is mindful that papers filed by pro se litigants are held "to less stringent standards than formal pleadings drafted by lawyers" (*Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 [1972]) because a "pro se litigant should be afforded every reasonable opportunity to demonstrate that he [or she] has a valid claim" (*Satchell v. Dilworth*, 745 F.2d 781, 785 [2d Cir.1984]; *see also Branum, supra*, 927 F.2d at p. 705).

It is within the above framework that the Court addresses the present motions to dismiss. The Court notes that at times it will refer to information not contained within the complaint only for purposes of background and clarity.

### Abstention/Domestic Relations:

Federal—State Relations

The doctrine of abstention is based upon a Supreme Court decision which addressed the "comity" that exists between federal and state courts which prevents a federal court from interfering with an ongoing state proceeding (*See Younger v. Harris*, 401 U.S. 37, 43–46, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 [1971]). According to the Supreme Court, the *Younger* abstention doctrine is derived from the recognition

> "that a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights, and, in that circumstance, the restraining of an ongoing [state proceeding] would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secured by the Constitution of the United States" (*Steffel v. Thompson*, 415 U.S. 452, 460–61 [94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974)], *quoted in Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178, 183 [2d Cir.], *cert. denied*, [—— U.S. ——] 112 S.Ct. 193 [116 L.Ed.2d 153 (1991)]).

The Supreme Court recently stated that the application of the *Younger* doctrine is "not only when the pending state proceedings are criminal, but also when certain civil proceed-

ings are pending, if the State's interests in the proceeding are so important that exercise of the federal jurisdictional power would disregard to comity between the States and the National Government" (*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 [1987]; *see also Tang v. Appellate Division of N.Y. Supreme Court, First Dep't*, 487 F.2d 138, 142–43 [2d Cir.1973], *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 [1974]).

In the present case, the plaintiff appears to be challenging court decisions relating to his divorce, separation, and the custody of his son as well as the actions taken by the individual defendants with respect to the enforcement of those state court decisions (*See* Complaint *passim*). The New York Constitution provides, in relevant part, that "[t]he supreme court shall have general original jurisdiction in law and equity and the appellate jurisdiction herein provided" (N.Y. Const. art. 6, § 7[a]). Given the fact that the supreme court, the primary trial court of the State of New York, has broad sweeping powers, it clearly has the jurisdiction to interpret the United States Constitution and render a decision concerning the actions allegedly taken by these defendants (*See Pennzoil, supra*, 481 U.S. at pp. 15–16, 107 S.Ct. at pp. 1528–29).

At oral argument the plaintiff cited to the case of *Cheng v. Wheaton*, 745 F.Supp. 819, 821 (D.Conn.1990), for the proposition that depriving a parent of alternative treatment methods for a child constitutes a deprivation of a constitutional right so that a federal court is not barred by the doctrine of abstention. The *Cheng* decision sets forth the test for a Court to utilize in determining whether abstention applies.

"The court must resolve three questions: '(1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding.'" (*Cheng, supra*, 745 F.Supp. at p. 821 [*quoting CECOS Int'l Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir.1990)]).

In *Cheng* the State Court removed a child from the custody of her parent and thereafter ordered that a surgical procedure be performed on the child, without the parent's consent. Although there was an appeal mechanism in place to review the state court decision, the exigency of the situation in essence vitiated all reasonable opportunity for appeal because the appeal would take place after the operation (*See Cheng, supra*, 745 F.Supp. at p. 821). In the present case the "exigency" presented to the Court in *Cheng* does not exist because the main thrust of the plaintiff's claim is the impropriety of Family Court rulings. The Court determines that in this case there is an ongoing state proceeding and the determination about divorce, custody, and support is an important state interest. Since the New York State trial and appellate courts are empowered to review the constitutional arguments presented in this case during the ongoing support and custody proceedings, this Court should decline to review these decisions at this time, if ever (*See Cecos, supra*, 895 F.2d at p. 70).

■ Even after the state case has been presented to the highest court in the state, the Federal District Court may still not act as an appellate tribunal to review the decision of that state court. The constitutional review of such final determinations can be obtained only in the Supreme Court of the United States which is vested with such original jurisdiction (*See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 [1983]; *see also* 28 U.S.C. § 1257 (jurisdiction of Supreme Court).)

Even if the Court were able to construe this action in a manner enabling it to obtain jurisdiction, the case would still be barred since a Federal District Court should not entertain disputes involving domestic relations.

Family Court/Domestic Relations

■ As stated in *Neustein v. Orbach*, 732 F.Supp. 333 (E.D.N.Y.1990), Judge Bartels determined that "where constitutional claims arising out of a domestic relations dispute are frivolous the action must be dismissed because it is an abortive attempt to involve the federal courts in domestic relations mat-

ters best left to the states" (*Neustein, supra,* 732 F.Supp. at p. 339 [*citing Hernstadt v. Hernstadt,* 373 F.2d 316 (2d Cir.1967) ] ).

In the *Neustein* case, the District Court found that the claim of a constitutional violation pertaining to the issues raised in the federal complaint were previously dismissed, as without merit, by the Appellate Division. The Court concluded that the "[p]laintiff's sole purpose in bringing this domestic relations dispute to the federal court is a frivolous attempt to engage the Court in a matter over which it has no jurisdiction" (*Neustein, supra,* 732 F.Supp. at p. 339).

This case presents a similar factual situation. The plaintiff Fariello is apparently dissatisfied with the decisions issued by the Family Court as well as the actions taken by those implementing those decisions. Upon a review of the record, this Court determines that contemporaneous with the prosecution of this federal lawsuit, the plaintiff has sought and continues to seek review of the Family Court actions in New York appellate courts.

A decision was rendered on February 3, 1993 by Justice Paul Baisley of the Suffolk County Supreme Court, dismissing an Article 78 Proceeding commenced by the plaintiff against seven of the twenty defendants in this case, concerning actions taken by the Family Court relating to custody and visitation rights. That decision stated, in part, that

"[t]o the extent the petitioner seeks a declaratory judgment on the validity of the provisions regarding child support in a judgment of divorce, the petitioner has failed to adduce a copy of such judgment or any other evidence upon which this Court could determine the validity of any provision of the judgment.

All other relief requested by the petitioner is precluded by CPLR § 7801(2) which prohibits the use of a proceeding pursuant to CPLR Article 78 'to challenge a determination which was made in a civil action or criminal matter unless it is an order summarily punishing a contempt committed in the presence of the Court.' since the proceeding arises out of and challenges orders issued in a *pending action in*

*the Family Court,* this proceeding must be dismissed pursuant to CPLR § 7801(2)" ( [emphasis added] ).

The plaintiff's attempt to utilize this Federal District Court to enjoin state court proceedings and award injunctive as well as monetary relief will interfere with the ongoing state proceedings and violate the federal doctrine of abstention.

Although the Court apparently lacks jurisdiction over this matter, nevertheless the Court will address the allegations contained in the complaint to determine whether they sufficiently allege a civil rights violations.

### Civil Rights Violations:

The lengthy and often incomprehensible complaint filed by the plaintiff Fariello alleges a multitude of constitutional deprivations and conspiracies directed at him by a host of defendants. The essence of the plaintiff's allegations center around the alleged violation of his constitutional rights under 42 U.S.C. § 1983 ("Section 1983").

This statute provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" (42 U.S.C. § 1983). In order for the plaintiff to prove a Section 1983 violation, he must demonstrate that the defendants deprived him of his constitutional rights while they were acting under "color of state law" (*See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 [1981]; *McDarby v. Dinkins,* 907 F.2d 1334, 1336 [2d Cir.1990] ).

At oral argument the plaintiff stressed his reliance upon the authoritative treatise "Constitutional Law in a Nutshell" for numerous propositions, including the requirements for establishing a civil rights violation. According to Second Circuit authority, "to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than

broad, simple, and conclusory statements are insufficient to state a claim under § 1983" (*Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 [2d Cir.1987] ). Merely setting forth an abundance of verbiage in a complaint does not satisfy this pleading requirement.

With respect to the allegations pertaining to the actions of the Family Court, the Court is mindful that the actions of a state court are entitled to a presumption of regularity which must be overcome by pleadings which do more than merely state generalizations about a conspiracy to deprive the plaintiff of his rights (*See Ostrer v. Aronwald*, 567 F.2d 551, 553–54 [2d Cir.1977] ).

### Civil Rights Conspiracy:

■ In discussing the evaluation of a civil rights conspiracy complaint, the Second Circuit opined that:

"To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act. 'In the final analysis the question is whether "the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State"'" (*Spear v. Town of West Hartford*, 954 F.2d 63, 68 [2d Cir.], *cert. denied*, [—— U.S. ——] 113 S.Ct. 66 [121 L.Ed.2d 33 (1992)] [citations omitted] ).

In evaluating the complaint in the present action, the Court notes that "in the Second Circuit, complaints based on the conspiracy provisions of the Civil Rights Statutes *cannot rest on vague or conclusory allegations but must 'allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy'*" (*Chodos v. Federal Bureau of Investigation*, 559 F.Supp. 69, 72 [S.D.N.Y.] [emphasis added], *aff'd*, 697 F.2d 289 [2d Cir.1982], *cert. denied*, 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 [1983] [*citing Powell v. Workmen's Compensation Board*, 327 F.2d 131, 137 (2d Cir.1964) ]; *see also Gray v. Town of Darien*, 927 F.2d 69, 72–73 [2d Cir.], *cert. denied*, —— U.S. ——, 112 S.Ct. 170, 116 L.Ed.2d 133 [1991] [civil rights conspiracy] ). In evaluating the complaint in the *Chodos*

case, the District Court found that it consisted of

"rambling, confused documents from which it is impossible to adequately discern the basis for plaintiff's claim of the facts upon which the alleged claim exists. Although federal courts indulge *pro se* pleaders, the instant complaints do not conform with even a relaxed requirement. 'Complaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [the goals of the federal system]; such complaints must be dismissed'" (*Chodos, supra*, 559 F.Supp. at p. 72 [*quoting Prezzi v. Berzak*, 57 F.R.D. 149 (S.D.N.Y.1972) ] ).

The Court recognizes that a Section 1983 claim may not be held to a "heightened pleading standard" (*See Leatherman, supra*, —— .U.S. at p. ——, 113 S.Ct. at p. 1162 [addressing "*Monell*" municipal liability] ), however, the complaint must contain more than merely broad based, conclusory statements (*See Spear, supra*, 954 F.2d at p. 68).

It is within this framework that the Court will address those portions of the "rambling and confused" complaint in this case that purports to allege a civil rights conspiracy that deprived the plaintiff of his constitutional rights.

### Equal Protection:

The plaintiff alleges many claims against numerous defendants that his civil rights were violated because he was deprived of equal protection under the law. According to the Second Circuit, "[t]o state an equal protection claim, a plaintiff must charge a government officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation'" (*Brady v. Colchester*, 863 F.2d 205, 216 [2d Cir.1988] [*quoting Burt v. City of New York*, 156 F.2d 791, 792 (2d Cir.1946) ] ).

In the present case, after a searching and comprehensive review of the allegations contained within this voluminous complaint, the Court determines that there are no allegations that there was any interpretation of a statute by a government officer that singles

out the plaintiff, nor can the Court foresee such a viable allegation in the future. Accordingly, all allegations alleging a claim of an "equal protection violation" are dismissed as to all defendants, with prejudice.

The Court will now address the non-"equal protection" motions to dismiss made by the defendants.

### 1. Motion by the Attorney General:

*As to the Judges and Hearing Officers*

█ Five of the defendants named in the complaint are judicial officers: Hon. Howard Berler, Hon. Marion T. McNulty, and Hon. Arthur Abrams are Judges of the Family Court of Suffolk County and William Rodriguez and William Ekadis are Family Court Hearing Officers in Suffolk County. It is well settled that judicial officers performing judicial functions within their jurisdictions are granted absolute immunity (*See Dorman v. Higgins*, 821 F.2d 133, 137 [2d Cir.1987] [*citing Pierson v. Ray*, 386 U.S. 547, 553–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967)]; *see also* N.Y.Fam.Ct. Act § 145 [statutory provision for judicial immunity within the Family Court]). The Supreme Court clearly stated that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction" (*Pierson, supra*, 386 U.S. at p. 554, 87 S.Ct. at p. 1217; *accord Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S.Ct. 496, 499–500, 88 L.Ed.2d 507 [1985] [*quoting Pierson*]).

Absolute immunity applies "even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences'" (*Pierson, supra*, 386 U.S. at p. 554, 87 S.Ct. at p. 1218).

█ As stated by the Supreme Court, the proper inquiry "in determining whether a defendant judge is immune from suit is *whether at the time he took the challenged action he had jurisdiction over the subject matter before him*" (*Stump v. Sparkman*, 435

U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 [1978] [emphasis added]). The determination about whether a judge has jurisdiction must be broadly construed and "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction'" (*Id.* at p. 356–57, 98 S.Ct. at p. 1105 [citation omitted]). The Second Circuit has even sustained a finding of absolute judicial immunity in a case where a county court judge was alleged to have altered a trial transcript (*See Green v. Maraio*, 722 F.2d 1013, 1017–18 [1983] [judge possessing subject matter jurisdiction has absolute immunity]).

As for the applicability of the principles of absolute judicial immunity to civil rights litigation, the Supreme Court in *Pierson* stated that "[w]e do not believe that this settled principle of law was abolished by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights" (*Pierson, supra*, 386 U.S. at p. 554, 87 S.Ct. at p. 1218). The threshold determination is whether the Judges and Hearing Officers involved in the present civil rights case possessed subject matter jurisdiction over the proceedings before them.

Hon. Howard Berler, Hon. Marion T. McNulty, and Hon. Arthur J. Abrams are Judges of the New York State Family Court who signed various orders relating to support and custody proceedings between Salvatore Fariello and Karen Marotta, Fariello's ex-wife. In addition, William Rodriguez and William Ekadis are Judicial Hearing Officers who are part of the Family Court and who presided over certain assigned support and custody proceedings between Salvatore Fariello and Karen Marotta.

According to New York law, "[t]he Family court has exclusive jurisdiction over ... support proceedings ... [and] such other jurisdiction as is set forth in this act, including jurisdiction over habeas corpus proceedings and over applications for support, maintenance, a distribution of marital property and custody in matrimonial actions when referred to the family court by the supreme court"

(N.Y.Fam.Ct. Act § 115[a] & [b]; *see also* N.Y.Fam.Ct. Act § 411). Since the apparent basis for the claims against the Family Court Judges and hearing examiners were the assigned support and custody proceedings between Salvatore Fariello and Karen Marotta, the judges and hearing officers did possess subject matter jurisdiction over the proceedings. Accordingly, all of these officials are entitled to absolute judicial immunity in this case (*See Stump, supra,* 435 U.S. at p. 356, 98 S.Ct. at pp. 1104–05).

The Practice Commentary discussing the role of the Family Court states as follows:

"Because it deals with the human problems of children and families in crisis, the Family Court may be New York's most important trial court. The Family Court deals with lives. On any one day, a Family Court Judge may decide whether an abused or neglected child should be removed from his parents and placed in foster care, perhaps for years; whether a misbehaving youth should be sent to a state training school or similar institution; whether a father or mother should be ordered out of the home and prohibited from returning; whether a child's custody should be transferred from one parent to another; whether a parental relationship should be permanently terminated and the child freed for adoption; whether a child's paternity has been established; and whether a spouse or child should be financially supported" (Practice Commentaries by Douglas J. Besharov, N.Y.Fam.Ct. Act § 111 [McKinney]).

In ruling upon the difficult decisions within the subject matter jurisdiction of the Family Court, the Family Court Judges and Hearing Officers must be afforded the same absolute judicial immunity as all other judges. According to a New York State Appellate Court, "[w]here the Family Court Judge engages in a judicial function ... he *should be entitled to the protection of the common-law rule of absolute immunity ... To conclude otherwise would subject the Family Court Judge to the harassment and intimidation that give rise to the need for the common-law rule*" (*Lombardoni v. Boccaccio,* 121 A.D.2d 828, 504 N.Y.S.2d 260, 262 [3d Dep't 1986]

[emphasis added] ). The Court notes that the "harassment and intimidation" referred to in the *Lombardoni* case is apparently occurring in the present case.

Accordingly, the Court determines as a matter of law that Family Court Judges Abrams, Berler, and McNulty and Family Court Judicial Hearing Officers Rodriguez and Ekadis are entitled to absolute immunity and the complaint is dismissed against all of those defendants, in its entirety, with prejudice (*See Stump, supra,* 435 U.S. at p. 356, 98 S.Ct. at pp. 1104–05; *see also Polur v. Raffe,* 912 F.2d 52, 55–56 [2d Cir.1990], *cert. denied,* —— U.S. ——, 111 S.Ct. 1389, 113 L.Ed.2d 446 ( [1991] [discussing absolute judicial immunity] ).

In addition, any cause of action in the complaint against "All Family Court and Supreme Court Judges and Hearing Examiners in the State of New York whether elected or appointed, in their official capacity" is dismissed, with prejudice.

The plaintiff was given the opportunity to voluntarily discontinue these actions against the judicial officials possessing absolute immunity, but refused to do so. The Court will address the issue of sanctions for this conduct at the conclusion of this decision.

*As to Edward Heepe*

Although one would never know it from the complaint, Edward Heepe is a clerk at the Family Court and according to the allegations in the complaint he "conspired" with various defendants to deprive Fariello of his rights. In particular, it is alleged that Heepe conspired with the defendant Judge Arthur Abrams by "refusing to allow Salvatore Fariello to obtain copies of any documents in his files at the Family Court building in Hauppauge, New York" (Complaint, at p. 18). In addition, the complaint alleges, in relevant part, that this defendant:

1– Acted with co-conspirators to "suppress[ ] petitions file in the Family Court ... [and] caused these petitions not to be calendared" (Complaint, at § [V][A][12] ); and

2– Caused the plaintiff to have his freedom of reputation violated by requiring him to "appear in Family Court on Octo-

ber 29, 1992 to answer the charge of a violation of a court order that does not exist where the conspirators has full knowledge that it did not exist" (Complaint, at § [V][B][5] ).

In evaluating the claims asserted against the defendant Heepe, the Court finds that the allegations are insufficient as a matter of law to support a Section 1983 or 1985 conspiracy cause of action (*See 423 South Salina Street, Inc. v. City of Syracuse*, 724 F.2d 26, 27 [2d Cir.1983] ). In addition, as discussed earlier, any question about the constitutionality of the actions taken by the Court Clerk in administering the directives of the Family Court Orders should be resolved in the state courts. Taking all the factual allegations against the defendant Heepe as true, the Court finds that the complaint fails to state a claim, as a matter of law. Therefore, the motion to dismiss the action against the defendant Heepe is granted (*See Chodos, supra*, 559 F.Supp. at p. 72).

*As to Stony Brook University Hospital and James Madden*

The allegations against these defendants revolve around the admission of the plaintiff's son Jared Fariello into Stony Brook University Hospital. The plaintiff Salvatore Fariello visited the hospital on May 16, 1991, despite the fact that the Family Court issued an order dated December 20, 1990 which provided that he may only visit his son with the son's prior consent. There was no such consent given by the son.

The defendant James Madden was the supervisor of security on duty at the time Salvatore Fariello attempted to visit his son. Apparently Fariello went into Madden's office to telephone his son in an unsuccessful attempt to obtain the required consent. Without success in obtaining such consent, Fariello left the hospital.

■ The complaint alleges the conclusory statement that the defendant James Madden "unlawfully arrested and detained" Fariello (Complaint, at ¶ S[1] ). This is "nothing more than a broad, simple, and conclusory statement ... [which is] insufficient to state a claim under § 1983" (*Alfaro Motors, supra*, 814 F.2d at p. 887). In addition, the com-

plaint also states that this defendant deprived Fariello of his "right to practice his religion on May 16, 1991 in that he prevented Salvatore Fariello from exercising supervision over his son's medical treatment and therapy where such supervision is called for as a matter of Salvatore Fariello's religious persuasion" (Complaint, at § S[2] ).

■ First, the Court notes that the actions alleged to have been taken by the defendant James Madden were pursuant to a lawful Order of the Family Court. Permitting the plaintiff to visit with his son in the absence of the son's permission would have been a violation of that order.

The Second Circuit has clearly established that "government officials are immune from liability for alleged constitutional violations if the claims do not allege violations of law which were 'clearly established at the time an action occurred" (*Easton v. Sundram*, 947 F.2d 1011, 1015 [2d Cir.1991] [*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 [1982], *cert. denied*, —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 [1992] ). When construing all allegations in favor of the plaintiff, the Court cannot state that the defendant Madden violated a "clearly established" law; in fact he was following an Order of the Family Court.

■ Second, a freedom of religion claim is traditionally based upon a "content based" restriction on the practice of religion (*See, e.g., Lamb's Chapel v. Center Moriches Union Free School Dist.*, 959 F.2d 381, 385–86 [2d Cir.1992], reversed on other grounds, —— U.S. ——, 113 S.Ct. 2141, 124 L.Ed.2d 352 ( [1993] ). In the present case the limited access to the plaintiff's son had absolutely nothing to do with a "content based" restriction of the plaintiff's practice of his religion. It was pursuant to a "content neutral" court order that prevented visits of any kind unless the son consented.

For the above reasons, the motion to dismiss the complaint as to the defendant James Madden is granted.

The complaint asserts that the defendant Stony Brook University Hospital is liable for the actions of Madden on the basis of the doctrine of respondeat superior. Since the

Court determined, as a matter of law, that the plaintiff failed to state a claim for relief as to the defendant Madden, a derivative claim against the hospital based upon respondeat superior, if any such claim exists, must also fail.

However, even if the claim against Madden was viable, the Second Circuit has clearly recognized that "[t]he doctrine of respondeat superior is unavailable as a basis for imposing liability under § 1983; there must be some showing of personal responsibility" (*Duchesne v. Sugarman*, 566 F.2d 817, 830 [2d Cir.1977] [*citing e.g., Arroyo v. Schaefer*, 548 F.2d 47, 51 (2d Cir.1977) ] ). In addition, the Stony Brook University Hospital is an entity of the State of New York and the under the provisions of the Eleventh Amendment to the Constitution, this action is barred in federal court (*See Pennhurst State School v. Halderman*, 465 U.S. 89, 100–01, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 [1984] ). Accordingly, the plaintiff failed to state a claim against the defendant Stony Brook University Hospital as a matter of law and the motion to dismiss the complaint in its entirety against this defendant is granted.

*The Cross–Motion by the Plaintiff Against the State Defendants*

The plaintiff cross-moved "for an ORDER granting the following relief: (1) Denying the motion of ROBERT DRINAN, said motion demanding dismissal of complaint against all state defendants and (2) an order granting plaintiff leave to amend the complaint against Arthur Abrams and Edward Heepe to include the charge of conspiracy to obstruct justice under color of state law and for a demand against Abrams for a money judgment in the sum of $20,000,000 (twenty million) for compensatory and punitive damages" (Plaintiff's Cross–Motion, dated April 5, 1993).

For the reasons stated above, the Court granted the state defendants' motion to dismiss the claims and accordingly the plaintiff's "cross-motion" to deny this motion is denied. In addressing the cross-motion for leave to amend the complaint, the Federal Rules of Civil Procedure provide that "leave [to amend a pleading] shall be freely given when justice so requires" (Fed.R.Civ.P. 15[a]; *see*

*also Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 287 [2d Cir.1974] ). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial (*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 [1962] ). In addition, a Court will not grant leave to amend when the proposed amendment is legally insufficient on its face (*See Rivera v. Dyett*, 1993 WL 54652, at *3–5 [S.D.N.Y. Feb. 16, 1993] [*citing Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ] ).

In addressing this cross-motion, the Court determines that any allegations against the defendant Abrams seeking additional monetary relief would be barred by the absolute judicial immunity discussed above. As for the allegations of obstruction of justice against the defendant Heepe, the Court deems the proposed amended complaint to be both legally insufficient on its face and futile since the plaintiff has, once again, broadly stated a conspiracy violation and offered no factual support for it whatsoever (*See Chodos, supra*, 559 F.Supp. at p. 72). Therefore, the cross-motion to amend the complaint is denied.

## 2. Motion on Behalf of Jayne Ann McPartlin

*Jayne Ann McPartlin*

On or about May 21, 1991 the Suffolk County Family Court, pursuant to its statutory powers, appointed McPartlin as Law Guardian for the plaintiff's son, Jared Fariello. At that time, McPartlin was employed as the Assistant Chief Attorney of the Legal Aid Society of Suffolk County. Accordingly, the defendant McPartlin functioned in a private capacity and thus could not have acted under "color of state law", as Section 1983 requires (*See Neustein, supra*, 732 F.Supp. at p. 345 [*citing Lefcourt v. Legal Aid Society*, 445 F.2d 1150, 1157 (2d Cir.1971) (holding Legal Aid Society is private entity which does not "act under color of state law" by representing clients) ] ).

The mere fact that a court has appointed a private attorney as the guardian of a child does not cause that attorney to act under "color of state law" (*Malachowski v. City of Keene*, 787 F.2d 704, 710 [1st Cir.], *cert. denied*, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 [1986]). Consequently, the plaintiff may only subject this defendant to Section 1983 liability by demonstrating that McPartlin conspired with or willfully engaged in joint activity with the state or its agents (*See Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185; *Spear, supra*, 954 F.2d at p. 68; *Neustein, supra*, 732 F.Supp. at p. 346).

The allegations in the complaint relating to actions commenced by the plaintiff Fariello on behalf of his son Jared Fariello were dismissed on February 19, 1993 and need not be further addressed in this motion. In addition to those allegations, Fariello's complaint broadly asserts that the defendant McPartlin conspired with others to accomplish the following:

1. Deprive him of his right to petition the government and his right to equal protection by filing a motion in opposition to his petition to suspend child support payments (Complaint, p. 20 ¶ 2).

2. Deprive him of his right to petition the government and his right to equal protection by filing a reply affirmation in opposition to his petition requesting resumption of visitation rights with his son (Complaint, p. 20 ¶ 3).

3. Deprive him of both his liberty interest in freedom to peacefully associate with his son and his rights to due process and equal protection by opposing his petition that requested resumption of his visitation rights with his son (Complaint, pp. 20–21 ¶ 4).

4. Deprive him of his right to petition the government and his right to equal protection by opposing his motion which demanded vacatur of a prior order of the court and an immediate resumption of visitation rights with his son (Complaint, p. 21 ¶ 5).

5. Deprive him of his right to petition the government for redress of grievances by suppressing his petitions filed in the Suffolk County Family Court and by causing

them not to be "rights" (Complaint, pp. 7–8 ¶ 12).

6. Deprive him of his right to freely practice his religion by refusing to acknowledge his belief that he should have primary supervisory authority over his son (Complaint, pp. 12–13 ¶ 4).

7. Deprive him of his right to petition the government and his rights to due process and equal protection by attempting to quash an Article 78 petition filed by him (Complaint, pp. 21–22 ¶ 9).

In evaluating the conspiracy claims asserted against the defendant McPartlin, the Court finds that the conclusory allegations are insufficient as a matter of law to support such a conspiracy claim (*See Spear, supra*, 954 F.2d at p. 68). Therefore, the motion to dismiss the complaint in its entirety against the defendant McPartlin is granted (*See Chodos, supra*, 559 F.Supp. at p. 72).

*The Cross–Motion by the Plaintiff in Opposition*

The plaintiff cross-moved for an order denying the motion on behalf of Jayne Ann McPartlin dismissing the complaint, or alternatively granting the plaintiff leave to amend the complaint against Jayne Ann McPartlin. Having granted the defendant's motion to dismiss the complaint, the plaintiff's motion is denied. In addressing leave to amend a complaint the Second Circuit stated,

"[w]hen a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.' 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12–99 (2d ed. 1989); *see also Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986) ("Complaints dismissed under Rule 9[b] are 'almost always' dismissed with leave to amend."). Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground" (*Ronzani v. Sanofi, S.A.*, 899 F.2d 195, 198 [2d Cir.1990] [*citing Foman, supra*, 371 U.S. at p. 182, 83 S.Ct. at p. 230]).

In the *Ronzani* case the Second Circuit remanded the case because the district court dismissed the complaint and did not address the plaintiff's offer to replead and gave no

reason for denying the motion to amend (*See Ronzani, supra*, 899 F.2d at pp. 198–99; *see also Day v. Morgenthau*, 909 F.2d 75, 78 [2d Cir.1990] ).

In the present case, upon a careful review of the track record of this litigation the Court is unable to conjure a non-frivolous amendment to the complaint relating to the defendant McPartlin. As a law guardian she carried out the decisions of the Family Court which are entitled to the presumption of regularity. She is not an independent state actor. Therefore, the Court denies leave to replead because the proposed amendment would be futile.

### 3. Motion by The County of Suffolk:

#### As to Michael F. Schwartz

This defendant is a managerial employee within the Child Support Enforcement Bureau of the Department of Social Services. The plaintiff alleges that he conspired with other defendants to violate the constitution by "taking Salvatore Fariello's ... private property for public use without just compensation. The conspirators did this to secure additional federal payments for child support enforcement to meet New York State quotas for support collection" (Complaint, at § [H][1] ). In addition, the complaint alleges, in relevant part, that:

1– This defendant had the plaintiff cited for contempt of court and incarcerated for alleged violations of non-existing court orders (Complaint, at § H[2] ); and

2– The defendant conspired to deprive the plaintiff of his freedom and reputation by "causing Salvatore Fariello to appear in Family Court on October 29, 1992 to answer the charge of violation of a court order that does not exist" (Complaint, at § H[3] ).

In evaluating the conspiracy claims asserted against the defendant Michael Schwartz, the Court finds that the allegations are conclusory statements which are insufficient to support a conspiracy claim. Therefore the motion to dismiss the complaint in its entirety against the defendant Schwartz is granted (*See Chodos, supra*, 559 F.Supp. at p. 72).

#### As to the Suffolk County Dep't of Social Services

The complaint alleges that this defendant deprived him of the right to present evidence at a hearing which "would have shown that he did not owe child support monies alleged to be in arrears by the Suffolk County Department of Social Services" (Complaint, at § I[1] ). It also alleges that he was deprived of his good name and reputation "by initiating a state and federal income tax intercept proceeding" (Complaint, at § I[2] ) and this defendant participated in the "conspiracy" involving the defendant Schwartz which was discussed above. Initially, the Court notes that these state and federal income tax proceedings are entitled to a presumption of regularity which was not overcome by the allegations in this complaint.

The alleged inability to present evidence at a hearing is a topic appropriate for appellate review within the State of New York and will not provide the basis for the limited jurisdiction of the Federal District Court, as a matter of law. In addition, after evaluating the conspiracy claims asserted against the defendant the defendant Suffolk County Department of Social Services, the Court finds that the allegations are totally conclusory and insufficient as a matter of law to support a conspiracy claim. Therefore, the motion to dismiss the complaint in its entirety against the defendant Suffolk County Dep't of Social Services is granted (*See Chodos, supra*, 559 F.Supp. at p. 72).

#### As to the County of Suffolk

The complaint alleges that this defendant, together with other co-defendants, conspired to violate the constitution by "taking Salvatore Fariello's ... private property for public use without just compensation. The conspirators did this to secure additional federal payments for child support enforcement to meet New York State quotas for support collection" (Complaint, at § [J][1] ). Once again, after evaluating the conspiracy claims asserted against the defendant the defendant Suffolk County, the Court finds that the allegations are insufficient as a matter of law because the complaint merely asserts conclu-

sory statements (*See 423 South Salina, supra*, 724 F.2d at p. 27). Therefore the motion to dismiss the complaint in its entirety against the defendant County of Suffolk is granted (*See Chodos, supra*, 559 F.Supp. at p. 72).

*The Cross–Motion by the Plaintiff in Opposition*

The plaintiff cross-moved to: (1) deny the motion by the above named Suffolk County defendants; (2) grant the plaintiff leave to amend the complaint "to join assistant Suffolk County District Attorney Joseph Lombardo in this action"; (3) cite the attorney for the county for perjury; and (4) direct

"the Family Court of the State of New York, or the Appellate Division of the Supreme Court of the State of New York, or any other state court or agency that may be in possession of plaintiff's family court files under docket numbers F2937–90, F3142–90 and F1502–91 to immediately surrender such files in their entirety to this United States District Court at which location plaintiff shall be permitted by this district court to fully examine said files and obtain copies of any and all documents in said files for use as evidence in this federal action" (Plaintiff's Cross–Motion in Opposition, dated April 1, 1993).

Addressing the fourth item first, if ever there was a situation involving a "Fishing Expedition", this is it! The Court declines to get embroiled in a futile discovery embroglio at this time.

Since the Court granted the Suffolk County defendants' motions to dismiss, the Court declines to grant the plaintiff's cross-motion denying the dismissal. In addressing the cross-motion to amend the Court notes that the standard governing a motion to amend is set forth in detail above. In the present case, the Court determines that the amendment would be legally insufficient as a matter of law and would be futile.

### 4. Motions by Karen Marotta, Michael Marotta, and Eric Sackstein

The voluminous claims against the defendants Karen Marotta, Michael Marotta, and Eric Sackstein (the plaintiff's ex-wife, her new husband, and attorney, respectively) appear to be the main objects of the herculean task undertaken by the plaintiff in drafting the instant complaint. Although the complaint contains nuances that differentiate between these three defendants, the main thrust of the allegations revolve around the conspiracy between all three to deprive the plaintiff of his civil rights. Therefore, the Court will address these three defendants together.

The plaintiff alleges that these three defendants conspired to deprive him of his constitutional rights. However since these defendants are private persons, the plaintiff's Section 1983 claims against them must relate to a "conspiracy" with the state actors (*See Dennis, supra*, 449 U.S. at pp. 27–28, 101 S.Ct. at p. 86; *Spear, supra*, 954 F.2d at p. 68; *Neustein, supra*, 732 F.Supp. at p. 346). The plaintiff asserts, in pertinent part, that these defendants conspired to do many things, including the following:

1. Impair the "Obligation of Contract" between them and to deprive him of his rights to due process and equal protection of the laws by preventing him from having contact with his son and by having him unlawfully arrested at University Hospital Stony Brook on May 16, 1991 and at Nassau County Medical Center on January 8, 1992 (Complaint, pp. 27–28 ¶ 1 & 2).

2. Deprive him of his right to trial by jury and violated his Fourteenth Amendment Due Process rights on November 29, 1990, January 30, 1991, March 27, 1991, July 10, 1991 and August 30, 1991 (Complaint, p. 28 ¶ 5, p. 7 ¶ 10, p. 5 ¶ 1).

3. Impair the Obligation of Contract by "abrogating the terms of a separation contract" by receiving money judgments on April 25, 1991 and on June 9, 1992 (Complaint, p. 28 ¶ 5, p. 7 ¶ 10, p. 5 ¶ 2).

4. *Deprive him of his Thirteenth Amendment right to be "free from involuntary servitude by placing him in a position subservient to her"* (Complaint, p. 28 ¶ 5, p. 7 ¶ 10, p. 6 ¶ 4 [emphasis added]).

5. Deprive him of his rights to due process, equal protection, right to counsel and the right to a jury trial (Complaint, p. 28 ¶ 5, p. 7 ¶ 10, p. 6 ¶ 5).

6. Deprive him of his rights to equal protection on January 30, 1991, March 27, 1991, April 25, 1991, August 30, 1991 and June 9, 1992 by being found *"intrinsically more qualified to prudently expend money in support" of their son"* (Complaint, p. 28 ¶ 5, p. 7 ¶ 10, p. 6 ¶ 6 [emphasis added]).

7. Deprive him of his right to "freely practice his religion and prohibited the free exercise thereof, and further violated the anti-establishment clause of the First Amendment" by "refusing to acknowledge the legitimacy of [his] religious beliefs based on Scripture *which beliefs mandate that a father has primary supervisory authority over his children's financial affairs and such children receive direct support from their father not subject to subordination by the children's mother*" (Complaint, p. 28 ¶ 5, p. 7 ¶ 10, p. 6 ¶ 7 and p. 29 ¶ 13, p. 12 ¶ 4 [emphasis added]).

8. Deprive him of his constitutional rights to be free from ex-post facto laws (Complaint, p. 28 ¶ 5, p. 7 ¶ 10, p. 6 ¶ 8).

9. Deprive him of his rights to due process and equal protection by seeking to have him "cited for contempt of court and incarcerated for alleged violations of non-existing court orders" (Complaint, p. 28 ¶ 6, p. 7 ¶ 11 and p. 29 ¶ 18, p. 22 ¶ 2).

10. "Commit grand larceny by constructive conversion" of his assets for the benefit herself and their son (Complaint, p. 28 ¶ 8, p. 8 ¶ 14).

11. "Unjustly enrich" Karen Marotta and Michael Marotta (Complaint, p. 28 ¶ 9, p. 8 ¶ 15).

12. Violate his "liberty interest in his freedom and reputation" and rights to due process and equal protection by causing him to answer the charge on October 29, 1992, of violating a court order (Complaint, p. 28 ¶ 10, p. 10 ¶ 5 and p. 29 ¶ 19, p. 23 ¶ 3).

After evaluating the conspiracy claims asserted against the defendants Karen Marotta, Michael Marotta, and Eric Sackstein, the Court finds that the allegations are legally insufficient. In addition to the failure to adequately allege state action, the conspiracy allegations are conclusory statements which are insufficient as a matter of law to support

a Section 1983 or 1985 conspiracy cause of action (*See Spear, supra,* 954 F.2d at p. 68; *423 South Salina, supra,* 724 F.2d at p. 27). Therefore, the motions to dismiss the complaint in its entirety against the defendants Karen Marotta, Michael Marotta, & Eric Sackstein are granted (*See Chodos, supra,* 559 F.Supp. at p. 72).

## 5. Motion by Nassau–Suffolk Law Services and Marilyn Drewry

### As to Marilyn Drewry

In the plaintiff's First Amendment Complaint he alleges that Marilyn Drewry interfered with his constitutional rights and conspired with others to deprive him of those rights. The plaintiff bases his claim for relief on similar grounds as discussed above as to the other defendants predicated on 42 U.S.C. § 1983.

Pursuant to a contract with the State Department of Social Services, Nassau–Suffolk Law Services assigned Drewry, a staff attorney in its office, to represent Karen Marotta in matters pertaining to the child support issues before the Family Court. As previously stated, court appointed private counsel are not considered to be acting under "color of state law" (*See Neustein, supra,* 732 F.Supp. at p. 345 [*citing Lefcourt, supra,* 445 F.2d at p. 1157 holding Legal Aid Society is private entity which does not "act under color of state law" by representing clients]). Consequently, the plaintiff may only subject Drewry to a Section 1983 action if he can demonstrate that she conspired with or willfully engaged in joint activity with the state or its agents (*See Dennis, supra,* 449 U.S. at pp. 27–28; *Spear, supra,* 954 F.2d at p. 68; *Neustein, supra,* 732 F.Supp. at p. 346).

With this in mind, this court will again address only those allegations in the complaint which assert the existence of a conspiracy. The plaintiff asserts that Drewry conspired to:

1. Deprive him of his right to equal protection of the laws by "participating in a covert state policy of discrimination against divorced fathers" (1st Amended Complaint, p. 5 ¶ 1).

2. Obstruct justice by "imped[ing], hinder[ing], obstruct[ing] and defeat[ing] the due course of justice in the state of New York with intent" to deny him equal protection of the laws and to injure his person and property (1st Amended Complaint, p. 6 ¶ 2).

3. Deprive him of his "liberty interest in exercising care and custody of his minor child" by the implementation of discriminatory policies against divorced fathers (1st Amended Complaint, pp. 7–8 ¶ 3).

4. Obstruct justice and deny him the equal protection of the law by acting with the Assistant Attorney General for the State of New York (1st Amended Complaint, p. 8 ¶ 4).

5. Impair the obligation of contract by "interposing arguments in an Affirmation to the Appellate Division of the State of New York" seeking to nullify a separation contract between him and Mrs. Marotta (1st Amended Complaint, pp. 8–9 ¶ 5).

At the outset the Court notes that on February 19, 1993 the Court dismissed all equal protection claims as to this defendant and the defendant Nassau–Suffolk Law Services Committee, with prejudice. Accordingly, all equal protection claims repleaded in the amended complaint will be disregarded.

After evaluating the conspiracy claims asserted against the defendant Marilyn Drewry contained in the First Amended Complaint, the Court finds that the amended complaint merely asserts conclusory statements which are insufficient, as a matter of law, to support a conspiracy claim (*See 423 South Salina, supra,* 724 F.2d at p. 27). Therefore the motions to dismiss the First Amended Complaint in its entirety against the defendant Marilyn Drewry is granted (*See Chodos, supra,* 559 F.Supp. at p. 72).

*As to the Nassau–Suffolk Law Services Committee*

The plaintiff also asserts in his First Amended Complaint that Nassau–Suffolk Law Services Committee violated his constitutional rights and conspired to deprive him of those rights based on the acts of Drewry on the theory of respondeat superior. Since the Court determined, as a matter of law, that the plaintiff failed to state a claim for

relief as to the defendant Drewry, the derivative claim against the Law Services Committee based upon respondeat superior must fail.

Even if the claim against Drewry would survive, as stated above, a Section 1983 action cannot be based upon the doctrine of respondeat superior. The Second Circuit clearly recognized that "[t]he doctrine of respondeat superior is unavailable as a basis for imposing liability under § 1983; there must be some showing of personal responsibility (*Duchesne v. Sugarman, supra,* 566 F.2d at p. 830). Accordingly, the complaint fails to state a claim against the defendant Nassau–Suffolk Law Services Committee and the motion to dismiss the complaint in its entirety against the said defendant is granted.

**6. Motion by Nassau County Attorney**

*As to Joseph R. Erazo and Joseph Lima*

The allegations against these defendants revolve around the admission of the plaintiff's son Jared Fariello into the Nassau County Medical Center for the purpose of having surgery performed on his left elbow. The plaintiff Fariello visited the hospital on January 8, 1992. As discussed above, the Family Court issued an order dated December 20, 1990 which prevented Fariello from visiting his son unless his son consented, and there was no such consent.

The defendant Joseph Lima is the Deputy Chief of the Department of Safety and Security at the Medical Center and was summoned to remove Mr. Fariello from his son's room. Lima and Fariello, thereafter, went to the office of Joseph Erazo, the General Counsel of the Nassau County Medical Center who apparently informed Mr. Fariello that he could visit with his son only with his son's consent.

The complaint alleges the conclusory statement that the defendants Erazo and Lima "unlawfully arrested and detained" Fariello (Complaint, at ¶¶ P[2] & Q[1] ). These statements are once again "nothing more than ... broad, simple, and conclusory statement ... [which are] insufficient to state a claim under

§ 1983" (*Alfaro Motors, supra,* 814 F.2d at p. 887).

In addition, the present action alleges that the defendant Joseph Erazo conspired with others to "impair the Obligation of Contract between Salvatore Fariello and Karen Marotta ... The contract at issue states that Salvatore Fariello shall have unrestricted access to his son in the place of his confinement for medical treatment and that Salvatore Fariello's approval shall be required for his son's medical treatment" (Complaint, at § P[1] ). Further, the complaint alleges that the defendants Erazo and Lima both deprived the plaintiff of his "right to practice his religion on January 8, 1992 in that he prevented Salvatore Fariello from exercising supervision over his son's medical treatment and therapy where such supervision is called for as a matter of Salvatore Fariello's religious persuasion" (Complaint, at § P[4]; *see also* Complaint, at § Q[2] ).

First, the Court notes that the actions alleged to have been taken by the defendants Erazo and Lima were pursuant to a lawful Order of the Family Court. Permitting the plaintiff to visit with his son in the absence of the son's permission would have been a violation of that order.

These defendants are entitled to qualified immunity for actions taken which do not violate a "clearly established" law (*See Easton, supra,* 947 F.2d at p. 1015). When construing all allegations in favor of the plaintiff, the Court cannot state that the defendants Erazo and Lima violated a "clearly established" law; in fact they were following an Order of the Family Court.

In addition, as stated above, a freedom of religion claim is based upon a "content based" restriction on the practice of religion (*See, e.g., Lamb's Chapel v. Center Moriches Union Free School Dist., supra,* 959 F.2d at pp. 385–86). In the present case the limited access to the plaintiff's son at Nassau Community Hospital had nothing to do with the "content" of any visit; it was pursuant to a "content neutral" court order that prevented visits of any kind unless the son consented.

It is based upon the above reasons that the motion to dismiss the complaint as to the defendants Joseph Erazo and Joseph Lima is granted.

*As to the Nassau County Medical Center*

The complaint asserts that the defendant Nassau County Medical Center is liable for the actions of Lima and Erazo on the basis of respondeat superior. Since the Court determined, as a matter of law, that the plaintiff failed to state a claims for relief as to the defendants Lima and Erazo, the derivative claim against the hospital also fails.

However, even if the claims against Lima and Erazo were viable, the Second Circuit recognized that "[t]he doctrine of respondeat superior is unavailable as a basis for imposing liability under § 1983; there must be some showing of personal responsibility" (*Duchesne, supra,* 566 F.2d at p. 830). Accordingly, the plaintiff fails to state a claim against the defendant Nassau County Medical Center as a matter of law and the motion to dismiss the complaint in its entirety as to the Nassau County Medical Center is granted.

### Sanctions:

The Court's Order dated February 19, 1993 directed the plaintiff Fariello, within ten days from the date of the Order, to "voluntarily discontinue this action as to all judicial officers possessing absolute immunity, as more fully set forth in the oral decision in the record, or be subject to the possible imposition of sanctions and/or costs and/or attorney's fees" (Order, dated February 19, 1993, at pp. 4–5). The plaintiff failed to do this and filed an affidavit in opposition to this provision of the Order.

The thrust of the opposition is that the issue of whether these judges and hearing officers have subject matter jurisdiction is in dispute and that the Court improperly concluded that the judges are entitled to absolute immunity. In support of this proposition, the plaintiff cites *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), to establish the principle that judges could be liable for attorney's fees and costs for civil rights violations. The Court declines to apply the rationale of the *Pulliam* decision because that factual situation is dramatically different than the facts in the present case.

In *Pulliam* the plaintiffs "claimed that Magistrate Pulliam's practice of imposing bail on persons arrested for nonjailable offenses under Virginia law and of incarcerating those persons if they could not meet the bail was unconstitutional" (*Pulliam, supra,* 466 U.S. at p. 524, 104 S.Ct. at p. 1972). In the present case, the allegations do not rise to this level, and reliance on *Pulliam* is rejected. Since the plaintiff failed to heed the warning of the district court and reevaluate his situation, the Court will consider the imposition of sanctions based upon the claims against the judicial officers.

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part, that:

"The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction ..." (Fed.R.Civ.P. 11).

According to the Supreme Court, a signature placed on a paper filed with the Federal Court, "certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well-grounded in both, and is acting without any improper motive" (*Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 542, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 [1991]).

The imposition of sanctions is mandated when the Court finds one of the following situations exist:

"(1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands" (*International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 [2d Cir.], *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 [1989]).

However, sanctions should not be imposed so as to chill creativity or stifle enthusiasm or advocacy (*See Securities Indus. Ass'n v. Clarke,* 898 F.2d 318, 322 [2d Cir.1990]; *see also McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 22 [2d Cir.1990]). Once a violation is found to exist though, the Rule is mandatory and the Court *must* impose a sanction (*See O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 709 [2d Cir.1990]). In determining whether Rule 11 has been violated, the Court must apply the "objectively reasonable" test (*See Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 [2d Cir.1985]).

Although Rule 11 applies to pro se litigants, a pro se plaintiff's papers are held to less stringent standard than papers submitted by attorneys (*See Haines, supra,* 404 U.S. at p. 520, 92 S.Ct. at p. 596). In this case, although the plaintiff appears to be an articulate gentleman who has apparently done extensive research of the law, nevertheless he is a pro se litigant. On the other hand "Pro se filings do not serve as an 'impenetrable shield, for one acting Pro Se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets'" (*Baker v. Ace Advertisers', Inc.,* 1992 WL 188362, at *13 [S.D.N.Y. July 29, 1992] [*quoting Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir.1986)]).

In the present case, the Court has clearly determined that the Family Court judges and hearing officers named in this action possessed subject matter jurisdiction over the actions taken and that the case lacks the egregious conduct as reflected in *Pulliam.* However, given the fact that the pleadings of a pro se litigant must be given a degree of deference, the plaintiff could have difficulty in deciding if the *Pulliam* theory would be applicable to the facts at bar. The Court

therefore determines that the plaintiff's action in declining to discontinue the action against the judges and hearing officers was arguably "objectively reasonable" (*See Eastway Constr., supra,* 762 F.2d at p. 253). Accordingly, in the exercise of the Court's discretion it declines to assess sanctions against the plaintiff based upon his failure to discontinue the action against the judicial officers.

## CONCLUSION

The Court notes, in concluding its odyssey through the plaintiff's voluminous complaint, that:

> "The intangible fibers that connect parent and child have infinite variety. They are woven throughout the fabric of our society, providing it with strength, beauty, and flexibility. It is self-evident that they are sufficiently vital to merit constitutional protection in appropriate cases" (*Lehr v. Robertson,* 463 U.S. 248, 256, 103 S.Ct. 2985, 2990, 77 L.Ed.2d 614 [1983]).

The Court concludes, as a matter of law, that the facts set forth in the complaint do not support a claim legally entitled to constitutional protection. Further, the Court is without the jurisdiction to review this matter based upon the doctrine of abstention and the preference in the federal courts of permitting state courts to address domestic relations disputes.

In essence, this complaint is an attempt to appeal certain Family Court decisions and the implementation of those decisions by some of the persons named. The Court finds that all of the claims raised by the plaintiff in the complaint are legally insufficient on their face and any opportunity to replead would be futile. Simply stated, the District Court is the wrong forum for this matter.

Accordingly, the Court makes the following determinations:

1– The motion by the plaintiff for an Order setting a hearing on damages based upon the default of the defendant Eric Sackstein is denied;

2– The motion by the plaintiff for an Order setting a hearing on damages based upon the default of the defendant Karen Marotta is denied;

3– The motion by the plaintiff for an Order setting a hearing on damages based upon the default of the defendant Michael Marotta is denied;

4– The motion by the defendant Karen Marotta pursuant to Fed.R.Civ.P. 55(c) to vacate the default entered against her is granted;

5– The motion by the defendants Michael Marotta and Eric Sackstein pursuant to Fed. R.Civ.P. 55(c) to vacate the defaults entered against them is granted;

6– The motion by the Attorney General of the State of New York on behalf of the defendants William Rodriguez, William Ekadis, Arthur J. Abrams, Howard Berler, Edward Heepe, James Madden, University Hospital Stony Brook, and All Family Court and Supreme Court Judges and Hearing Examiners in the State of New York dismissing the complaint against all of these defendants pursuant to Fed.R.Civ.P. 12(b)(6) is granted;

7– The cross-motion by the plaintiff in opposition to the above motion by the Attorney General is denied in all respects;

8– The motion on behalf of the defendant Jayne Ann McPartlin to dismiss the complaint·pursuant to Fed.R.Civ.P. 12(b)(6) is granted;

9– The cross-motion by the plaintiff "in opposition" to the above motion to dismiss the complaint as to Jayne Ann McPartlin is denied in all respects;

10– The motion on behalf of the defendants Michael F. Schwartz, Suffolk County Department of Social Services, and The County of Suffolk to dismiss the complaint against these defendants pursuant to Fed. R.Civ.P. 12(b)(6) is granted;

11– The cross-motion by the plaintiff "in opposition" to the above motion to dismiss the complaint against Michael F. Schwartz, Suffolk County Department of Social Services, and The County of Suffolk is denied in all respects;

12– The motion on behalf of the defendants Eric Sackstein, Karen Marotta, and Michael Marotta to dismiss the complaint as

against these defendants pursuant to Fed. R.Civ.P. 12(b)(6) is granted;

13– The motion on behalf of the defendants Marilyn Drewry and Nassau–Suffolk Law Services Committee, Inc. to dismiss the complaint as against these defendants pursuant to Fed.R.Civ.P. 12(b)(6) is granted;

14– The cross-motion by the plaintiff "in opposition" to the above motion to dismiss the complaint against Marilyn Drewry and Nassau–Suffolk Law Services Committee, Inc. is denied in all respects;

15– The motion on behalf of the defendants Joseph R. Erazo, Joseph Lima, and Nassau County Medical Center to dismiss the complaint as against these defendants pursuant to Fed.R.Civ.P. 12(b)(6) is granted;

The Clerk of the Court is advised that this decision closes the case.

**SO ORDERED.**